[No. D009759. Fourth Dist., Div. One. Sept. 26, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME PATRICK GOULART, Defendant and Appellant.

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Tim J. Nader, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WORK, Acting P. J.**—Jerome Patrick Goulart appeals a judgment convicting him of unlawfully interfering with a line erected and maintained by the San Diego Gas & Electric Company (SDG&E) for transmitting electricity. (Pen. Code,[1] § 593.) In exchange, similar charges for acts committed on May 5, May 9, and July 21, 1988, counts of interfering with natural gas delivery lines on April 27, May 5, May 9, and June 7, 1988, and a "wrap around" count of tampering with a SDG&E utility meter between April 27 and July 21, 1988, were dismissed subject to a *Harvey* [2] waiver. The trial court sentenced Goulart to probation subject to his paying $42,596.50 in restitution. Goulart appeals, claiming the trial court abused its discretion in imposing the restitution order. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Evidence taken at a restitution hearing during sentencing established that for more than six years, Goulart tampered with the gas and electric meters at his Lakeside home. Evidence that he had previously tampered with similar meters was also introduced. Goulart reduced his gas and electric bill by poking a hole in the plastic cover of utility meters and inserting a sewing needle which stopped the rotation of the meter disc so the energy consumption reading would cease at a certain point. To conceal his tampering, Goulart stopped the meter at approximately the same point each month.

Finally, Farrell Cox, a SDG&E investigator, discovered Goulart's scheme on June 7, 1988, by placing a line meter on Goulart's property to verify his energy consumption. This meter showed Goulart was actually consuming 17.8 therms of gas, and 100.2 kilowatt hours of electricity, per day. From these readings Cox estimated the total amount of gas and electricity stolen per month was $182 and $173, respectively.

On July 21, Cox was present when a search warrant was executed and noted the pool heater, the air conditioner, and several other major appliances were operating at the time. Goulart's meter, however, was not registering the energy being consumed. During the search, Cox found some old SDG&E bills, several of which contained written calculations purportedly evidencing the true amount of energy consumption for a particular month. In addition, the March 1982 bill bore the notation "too late." From this,

---

[1] All statutory references are to the Penal Code unless otherwise specified.
[2] *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

and the fact the plastic meter was installed in March, Cox concluded Goulart commenced stealing energy in March 1982.

Goulart was charged with eight violations of section 593 and one violation of section 498, subdivision (b)(2). He pled guilty to one count of interfering with or obstructing an electrical line on April 27, 1988; the other eight counts were dropped. Before pleading guilty he was advised the maximum punishment he could receive was three years in prison plus a $10,000 fine. He received probation. Later, at a restitution hearing, he was ordered to pay SDG&E $42,596.50 in restitution. Due to his lack of financial resources,[3] Goulart was allowed to repay SDG&E in monthly installments of $800 plus 10 percent interest. Goulart now challenges the validity of the restitution order as a condition of his probation.

## ANALYSIS

Section 1203 gives the trial court broad discretion in determining conditions of probation. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Section 1203.1 authorizes the court to require a defendant to make restitution to the victim as a condition of probation. A reviewing court may not invalidate any condition of probation, including restitution, unless the condition "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290]; see also *People* v. *Lent, supra*, 15 Cal.3d at p. 486; *People* v. *Corners* (1985) 176 Cal.App.3d 139, 143 [221 Cal.Rptr. 387].)

Goulart maintains each of the three conditions for challenging a condition of probation are present. He particularly stresses the fact he has been ordered to repay SDG&E on the basis of crimes for which he has not been tried or convicted.

In order for any condition of probation to be upheld it must serve at least one purpose listed in section 1203.1. (*People* v. *Clark* (1982) 130 Cal.App.3d 371, 385 [181 Cal.Rptr. 682].) While restitution serves the obvious function of compensating crime victims, its primary goal is the rehabilitation of the criminal.[4] (*People* v. *Richards* (1976) 17 Cal.3d 614, 620

---

[3] Goulart has filed for bankruptcy.

[4] Implicit in the concept of rehabilitation is the need to first deter criminal activity. Courts have generally found an order requiring the defendant to compensate the victim to be a deterrent to future criminal activity. (*People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 639 [214 Cal.Rptr. 170].)

[131 Cal.Rptr. 537, 552 P.2d 97]; *Charles S.* v. *Superior Court* (1982) 32 Cal.3d 741, 748 [187 Cal.Rptr. 144, 653 P.2d 648].) For a restitution order to have a such an effect, it must directly relate to the crime the defendant has committed. (*People* v. *Dominguez, supra,* 256 Cal.App.2d at p. 628.)

■ The trial court is not, however, limited to imposing restitution for losses resulting from crimes of which the defendant was convicted. (*People* v. *Lent, supra,* 15 Cal.3d at pp. 486-487; *Williams* v. *People of State of New York* (1949) 337 U.S. 241, 250 [93 L.Ed. 1337, 1343-1344, 69 S.Ct. 1079].) A court may also consider crimes which were charged but dismissed (*People* v. *Baumann* (1985) 176 Cal.App.3d 67, 78 [222 Cal.Rptr. 32]); uncharged crimes, the existence of which is readily apparent from the facts elicited at trial (*People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908 [112 Cal.Rptr. 745]); or even charges of which the defendant was acquitted, if justice requires they be considered. (*People* v. *Lent, supra,* 15 Cal.3d at p. 487.)

"It is obvious that unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted, this salutary rehabilitative effect cannot take place. No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime." (*People* v. *Richards, supra,* 17 Cal.3d at p. 622, fn. omitted.)

■ Here, it is readily apparent the trial court did consider energy thefts during time periods which Goulart was not, and some of which he could not have been, charged. It was certainly, however, within the trial judge's discretion to do so. Goulart does not contend the April 27 tampering to which he pled was the only offense he committed. Nor does he maintain he only committed those crimes which were charged. He does not deny the evidence clearly shows he had been tampering with SDG&E's meters since March 1982, fraudulently obtaining gas and electricity from SDG&E each month. (See *People* v. *Baumann, supra,* 176 Cal.App.3d at p. 77.) Thus, the restitution order serves a purpose listed in section 1203.1, to rehabilitate the defendant.

Despite the restitution order's proper purpose, Goulart argues the trial court abused its discretion four ways: (1) by setting a restitution amount which exceeded the scope of his *Harvey* waiver; (2) by imposing civil liability in a criminal case; (3) by basing the restitution amount on vague and inaccurate evidence; and (4) by imposing the restitution amount without considering his ability to pay.

1. SCOPE OF HARVEY WAIVER

■ Goulart argues a restitution order based upon uncharged crimes goes beyond the scope of his *Harvey* waiver in two respects. First, being

assessed restitution for periods for which he was never charged with criminal conduct was not within his reasonable expectation of the plea bargain. Second, so much of the restitution order which compensates SDG&E for losses for periods which could not be charged criminally or redressed civilly because of applicable statute of limitations, is unwarranted. Neither contention has merit.

## A

■ Implicit in plea bargains like this "is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*People* v. *Harvey, supra,* 25 Cal.3d at p. 758.) It was from the above parenthetical the notion of a *Harvey* waiver developed. A defendant who signs the typical waiver form agrees to allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges. (See *People* v. *Baumann, supra,* 176 Cal.App.3d at p. 75.)

However, to be effective, when taking a *Harvey* waiver the court must personally advise the defendant of the penal consequences of his guilty plea. The defendant also must be told the maximum punishment for the admitted crimes. (*In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561].) ■ In this case, both the waiver form and the trial court advised Goulart he faced a maximum sentence of three years in state prison and a $10,000 fine. The ensuing sentence was well within these limits, a 90-day jail term plus 5 years probation with the possibility of a reduction to a misdemeanor on successful completion.

Nevertheless, Goulart maintains because the trial judge did not inform him he could be required to pay restitution to SDG&E as a condition of probation, the restitution order goes beyond the scope of his waiver. In *People* v. *Oberreuter* (1988) 204 Cal.App.3d 884, 888 [251 Cal.Rptr. 522], this court considered a fine imposed pursuant to Government Code, section 13967, and concluded "a restitution fine, like any other penal consequence, may not be imposed on a plea-bargain participant where it was not included in the negotiated agreement." Relying on *Oberreuter,* Goulart asserts this order must be stricken because he was not told restitution could result from his plea. This was not required. This restitution order is not a penal consequence, it is a condition of probation. ■ "Probation is an act of leniency, not a matter of right." (*People* v. *Walmsley, supra,* 168 Cal.App.3d at p. 638, quoting *People* v. *Osslo* (1958) 50 Cal.2d 75, 103 [323 P.2d 397].) Probation as a sentencing alternative typically contains conditions; and one of the most frequently imposed conditions is the requirement restitution be

paid to the victim. (See *People* v. *Baumann, supra,* 176 Cal.App.3d at p. 75.) ■ Although a plea bargain participant need not be informed he could be ordered to pay restitution as a condition of probation before the court accepts his guilty plea, here, the record shows Goulart always expected to pay restitution, it is only the amount to which he objected when facing sentence.

B

■ Goulart also maintains the amount of restitution goes beyond the scope of his *Harvey* waiver because it took into account criminal acts, the prosecution of which was barred by the statute of limitations. He relies on section 801 which requires an information charging a felony violation be filed within three years after its commission. Defendant's reliance is misplaced. Section 801 has nothing to do with any facet of sentencing. All it requires is the prosecutor file charges within three years after the defendant committed an offense punishable by more than a year in prison. As long as the charges are filed within the statutory time frame, the mandates of the statute of limitations are satisfied.

Further, the public policy underlying section 801 is not violated by the restitution order in this case. The purpose of a statute of limitations is to limit the time period in which a person is exposed to criminal liability. (*Toussie* v. *United States* (1970) 397 U.S. 112, 114-115 [25 L.Ed.2d 156, 160-162, 90 S.Ct. 858]; accord *People* v. *Zamora* (1976) 18 Cal.3d 538, 546 [134 Cal.Rptr. 784, 557 P.2d 75].) Such limitations are designed "to protect individuals from having to defend themselves against charges after material facts have become obscured by the passage of time." (*People* v. *Kronemyer* (1987) 189 Cal.App.3d 314, 331 [234 Cal.Rptr. 442].) Section 801 was promulgated to prevent the state from bringing stale charges against an individual, and not to prevent convicted criminals from being required to compensate their victims. Thus, requiring Goulart to pay a restitution amount partially based upon prior criminal acts, the prosecution of some of which was barred by section 801, to permit him to avoid more severe penal consequences as a result of crimes which are timely brought, is not inconsistent with that section's primary purpose. We hold the statute of limitations does not bar a trial court from considering previous criminal acts when imposing sentence or setting conditions of probation. The restitution order did not violate section 801, and therefore, the amount ordered was not beyond the scope of Goulart's *Harvey* waiver.

2. CIVIL LIABILITY IN A CRIMINAL CASE

■ Goulart also meritlessly maintains the trial court's order impermissibly decides the merits of his civil obligation to SDG&E within the context

of criminal proceedings. Assuredly, the disposing of possible civil liability is not a proper function of restitution under section 1203.1.[5] However, restitution by definition impacts potential civil liability, restoring some or all of the value of property taken from a crime victim.[6]

## 3. AMOUNT OF RESTITUTION

■ Goulart next contends even if the trial court did not impermissibly dispose of civil liability, it abused its discretion by basing the amount of restitution upon vague and inaccurate information. Specifically, he challenges the imprecise method SDG&E used to estimate how much gas and electricity he "stole," claiming such an "arbitrary" formula violates his right to due process.

■ The due process clause does not require the same procedural safeguards be present at sentencing as in trial. (*Williams* v. *New York, supra,* 337 U.S. at p. 250 [93 L.Ed. at pp. 1343-1344].) "Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may nevertheless be received as bearing on the punishment to be imposed." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 725 [108 Cal.Rptr. 835, 511 P.2d 1187].) The trial judge may consider a wide range of factors in deciding upon the proper sentence. For example, as discussed in the previous section, a judge may consider evidence of other criminal conduct even though it did not result in a conviction.[7] (*United States* v. *Weston, supra,* 448 F.2d at p. 633.)

■ However, the California Supreme Court recognizes limits on the type of evidence which may be considered when imposing a sentence or setting probation conditions. (*People* v. *Peterson, supra,* 9 Cal.3d at p. 726.) "While *Williams* does not require the same procedural safeguards at probation hearings as in the case of a trial . . . an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are fundamentally unfair." (*People* v. *Peterson, supra,* 9 Cal.3d at

---

[5] "Among the reasons for this rule are that the criminal justice system is essentially incapable of determining civil liability and the extent of such liability; and such an invasion of civil law by a criminal court would deprive the defendant of important due process rights including pleadings, discovery and a jury trial on issues of liability and damages." (*People* v. *Clark, supra,* 130 Cal.App.3d at p. 385.)

[6] Section 1203.04, subdivision (d) mandates where a defendant is ordered to pay restitution for stolen property, the amount imposed shall equal either the replacement cost of like property or the actual cost of repairing the stolen property where repair is possible.

[7] The reasoning behind the Ninth Circuit's decision was its desire not "to transform the sentencing process into a second trial . . . ." It believed "other criminal conduct may properly be considered, even though the defendant was never charged with it . . . ." (*United States* v. *Weston* (9th Cir. 1971) 448 F.2d 626, 633.)

p. 726.) A condition of probation may be deemed fundamentally unfair if the judge improperly considered unreliable information. Due process demands penal systems be concerned with "the probable accuracy of the informational inputs in the sentencing process." (*United States* v. *Weston, supra*, 448 F.2d at p. 634.) Not only is it fundamentally unfair for a court to consider false information (*Townsend* v. *Burke* (1948) 334 U.S. 736 [92 L.Ed. 1690, 68 S.Ct. 1252]), but it is also unfair for it to consider evidence which is vague or inaccurate (*United States* v. *Weston, supra*, 448 F.2d at p. 634).

██ Here, Goulart maintains the court's reliance on the probation report and the testimony at the probation hearing, concerning the extent of SDG&E's losses, was fundamentally unfair. However, the court's order was based only on Cox's estimate at the hearing based on the average use determined by a line meter over a test period multiplied by the total time period involved. Adjustments were then made for changes in the price of gas and electricity. Cox's calculations are not shown to be based on vague or inaccurate information.

Nevertheless, Goulart maintains the means by which the amount of restitution was arrived at was fundamentally unfair, claiming the method of calculation was too simplistic. He speculates numerous factors, undoubtedly affecting his consumption of gas and electricity, were not taken into account. For instance, seasonal weather changes, how long he owned the pool, and his various vacations, were not considered by Cox when making the estimate. Goulart also relies heavily on Cox's admission on cross-examination that $42,596.50 was just an arbitrary amount, "not arrived at on proper billing principles."

A trial court "is not required to determine what damages might be recoverable in a civil action but may instead use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole . . . ." (*In re Brian S.* (1982) 130 Cal.App.3d 523, 531 [181 Cal.Rptr. 778].) Cox's method of calculation was rational and Goulart had ample opportunity to present evidence discrediting the estimate. He made no effort to do so, confining his attack to cross-examining Cox. If Goulart wanted to show there were relevant factors which would have minimized the extent of his thefts, he could have presented evidence at the hearing. Instead, he merely noted there could have been factors which, had they been present, would affect Cox's estimate. However, Goulart chose to leave these areas of proof void, subject only to his appellate speculation. Only Goulart could have established when the pool was installed, when the house was unoccupied, and when he actually tampered with the meter. ██ The defendant bears the burden of proving the victim's restitution

estimate exceeds the replacement cost of the stolen property. (*People* v. *Hartley* (1984) 163 Cal.App.3d 126, 130 [209 Cal.Rptr. 131].) The People and SDG&E need not disprove the existence of speculative factors.

## 4. DEFENDANT'S ABILITY TO PAY

 Goulart next argues the trial court ordered restitution without considering his ability to pay.

Equal protection requires a court to grant a hearing on a defendant's ability to pay restitution. (*People* v. *Cervantes* (1984) 154 Cal.App.3d 353, 361[201 Cal.Rptr. 187]; *People* v. *Kay* (1973) 36 Cal.App.3d 759, 763 [111 Cal.Rptr. 894, 73 A.L.R.3d 1235]; *People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1158 [261 Cal.Rptr. 93].) The reason for this is, when a defendant fails to pay ordered restitution, he violates probation, a circumstance which may result in imprisonment. The incarceration of defendants for inability to pay restitution violates the equal protection clause. (*In re Antazo* (1970) 3 Cal.3d 100, 115 [89 Cal.Rptr. 255, 473 P.2d 999].) Here, the probation hearing complied with the mandates of equal protection.

The record repeatedly refers to Goulart's dire financial situation, a fact of which the court was keenly aware. This is evidenced by the fact Goulart is allowed to repay SDG&E in monthly installments. If Goulart believed the court was not adequately considering his fiscal straits, he could have presented evidence at the probation hearing in addition to his oral representations repeated in the probation report. He did not. Even now he does not contend he is unable to comply with the restitution terms.

In any event, equal protection does not require a trial judge make an express finding of ability to pay *before* ordering restitution. (*People* v. *Ryan* (1988) 203 Cal.App.3d 189, 193 [249 Cal.Rptr. 750]; *People* v. *Vournazos* (1988) 198 Cal.App.3d 948, 957 [244 Cal.Rptr. 82].) ██ In fact, section 1203.04, which demands the trial court to "require, as a condition of probation, that the person make restitution" to the State Restitution Fund or the victim (§ 1203.04, subds. (a), (b)), does not require the court to consider the defendant's ability to pay before setting the amount.[8] (*People* v. *Ryan, supra,* 203 Cal.App.3d at p. 193.)

 Goulart simply argues the court's failure to make an express finding of his ability to pay violates the equal protection clause. Such an

---

[8] "The right of a victim to restitution from the person convicted of a crime from which the victim suffers a loss became a constitutional right when Proposition Eight was enacted. That constitutional right is not predicated on the defendant's ability to pay." (*People* v. *Ryan, supra,* 203 Cal.App.3d at p. 194.)

express finding is not necessary because section 1203.2, subdivision (a) prevents a court from revoking probation unless it determines the "defendant has willfully failed to pay and has the ability to pay." Under section 1203.2, no one may be incarcerated because he/she does not have the ability to pay the restitution which was a condition of his/her probation. So long as Goulart is not imprisoned due to his inability to pay SDG&E, the restitution ordered does not violate the equal protection clause. (*In re Antazo, supra*, 3 Cal.3d at pp. 115-116.) ■ Unlike the restitution fine in Government Code section 13967, subdivision (c), the probationary restitution order is not the equivalent of a civil judgment, nor is it res judicata in any civil action. He has suffered no deprivation of equal protection from the trial court's action.

■ Finally, Goulart maintains the restitution order improperly places SDG&E's unsecured claim ahead of his other creditors by making it nondischargeable. The nondischargeability premise of Goulart's contention has been recently eliminated by the United States Supreme Court's decision *Pennsylvania Dept. of Public Welfare* v. *Davenport* (1990) 495 U.S. __, __[109 L.Ed.2d 588, 600, 110 S.Ct. 2126, 2134], which construes Bankruptcy Code section 101 (11) to make state court criminal restitution orders dischargeable in bankruptcy.[9]

## DISPOSITION

The judgment is affirmed.

Froehlich, J., and Wien, J.,* concurred.

A petition for a rehearing was denied October 12, 1990, and appellant's petition for review by the Supreme Court was denied December 19, 1990.

---

[9] Thus, Goulart is entitled to discharge the criminal restitution order, but, it appears would not be able to discharge a civil judgment. (11 U.S.C § 523(a)(4); see also *People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 572 [193 Cal.Rptr. 394].)

* Assigned by the Chairperson of the Judicial Council.