Filed 12/12/13  P. v. Essapour CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062563 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD234059) |
| ZAYA ESSAPOUR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed in part, reversed in part and remanded with directions.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry J. Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

Zaya Essapour was charged with 21 offenses related to his involvement in a conspiracy to defraud elderly homeowners into refinancing their mortgages. He pleaded guilty to one count of theft from an elder, one count of unlawful use of personal identifying information of another, and one count of grand theft. He also admitted that the aggregate losses to the victims exceeded $65,000. The court dismissed the remaining charges with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*)) and ordered Essapour to pay a total of $2,293,915 in restitution, including to victims of uncharged and dismissed counts. Essapour appeals, contending the trial court abused its discretion by: (1) ordering him to pay restitution to victims whose losses were not related to his conduct; and (2) double counting certain amounts in the restitution award. As we shall explain, we conclude the trial court abused its discretion in holding Essapour jointly and severally responsible for restitution to victims whose losses arose from crimes committed before Essapour joined a conspiracy with his codefendants. Further, the Attorney General concedes and we agree that the trial court made a calculation error.

## FACTUAL AND PROCEDURAL BACKGROUND

The charges against Essapour and his codefendants, Pooyan Bakhtiar and Areyo Dadar, arose out of a series of loan transactions between 2007 and 2009. In general, during these transactions, an individual from Chase Mortgage Credit Group (Chase), La Jolla Lending and Real Estate (La Jolla Lending), or American National Home Loans (American National) offered to assist elderly homeowners with refinancing their home loans. Dadar was an officer and real estate broker for Chase and La Jolla Lending. He employed Bakhtiar, who was also a signatory on Chase's bank account. Essapour was a salesperson

at a satellite office of American National, which was listed as the broker and received fees related to some of the loans at issue. In some instances, the homeowners thought they were dealing with Chase but their settlement statements showed American National was their broker.

Typically, the homeowners received a good faith estimate for a new loan which reflected the terms they discussed with defendants or other individuals related to their companies. Thereafter, a notary, often Bakhtiar, would arrive at their home with loan documents for signature. Those loan documents generally did not reflect the terms that the homeowner had agreed to, but the notary advised the homeowners to sign the documents or reassured them that the terms would be corrected. When they received the closing documents in the mail, the homeowners discovered that they did not receive the loans they were promised. Some homeowners reported the principal amount of the loan and fees were more than negotiated and some found they were subject to a prepayment penalty they had not expected. As a result of refinancing, many homeowners were left with greater obligations than they had with their prior loan.

The complaint against Essapour and his codefendants identified 20 victims. After the preliminary hearing, Essapour pleaded guilty to three offenses with three separate victims. Essapour's guilty plea included a *Harvey* waiver, which stated, "[t]he sentencing judge may consider [his] prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." The trial court placed Essapour on four years probation, with 365 days in local custody.

At the restitution hearing, the prosecution presented evidence concerning losses suffered by the 20 victims identified in the complaint and also identified 19 additional homeowners who were victims of uncharged offenses. Essapour stipulated that he owed restitution to seven victims, including Craig Hawbaker, Herbert Hilton, Franklin Huffman, Richard Milford, Elias Mosqueda, Hugh Rae, and Gary Sheller, but not to the amounts owed.

The trial court ordered Essapour to pay $2,293,915 in restitution to 33 victims who transacted loans on or after November 23, 2007. Those individuals included 19 victims of uncharged offenses, five victims related to offenses charged only against Dadar and Bakhtiar, and two victims identified in conspiracy charges which were dismissed as part of Essapour's plea agreement. The trial court found "all . . . victims suffered losses due to actions of a single large interconnected conspiracy and not smaller conspiracies relating separately to the various mortgage institutions."

## DISCUSSION

### I. *Scope of Restitution Award*

Essapour argues the trial court abused its discretion by ordering him to pay restitution to victims whose losses were not related to his conduct. Specifically, he disputes the restitution awards to the 19 victims of uncharged offenses, the five victims related to offenses charged only as to Dadar and Bakhtiar, and the two victims identified in conspiracy charges which were dismissed. Essapour also disputes a portion of the restitution award to a victim who transacted two loans with defendants.

4

A.  General Restitution Principles

The parties dispute the statutory basis for the restitution order.  Essapour claims Penal Code section 1202.4 applies and therefore restitution is limited to actual economic losses proximately caused by the criminal conduct at issue.  (Undesignated statutory references are to the Penal Code.)  The People counter and we agree that section 1203.1 applies because Essapour was placed on probation.  "When probation is *granted* to a defendant, sections 1203.1 and 1203.04 govern restitution imposed as a condition of probation.  Section 1203.1 requires the court to 'consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund.' " (*People v. Foster* (1993) 14 Cal.App.4th 939, 949.)

The California Supreme Court explained the difference between the two statutes: "Trial courts continue to retain authority to impose restitution as a condition of probation in circumstances not otherwise dictated by section 1202.4.  In both sections 1203.1 and 1202.4, restitution serves the purposes of both criminal rehabilitation and victim compensation.  But the statutory schemes treat those goals differently.  When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow.  When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader, allowing a sentencing court the flexibility to assist a defendant as the circumstances of his or her case require." (*People v. Anderson* (2010) 50 Cal.4th 19, 29 (*Anderson*).)

Section 1203.1 gives trial courts broad discretion to impose probation conditions to foster rehabilitation and to protect public safety. The court may impose upon probationers "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damage that might be recoverable in a civil action." (*Anderson*, *supra*, 50 Cal.4th at p. 27.)

"A reviewing court may not invalidate any condition of probation, including restitution, unless the condition '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citations.]" (*People v. Goulart* (1990) 224 Cal.App.3d 71, 78.) We review a victim restitution order for an abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) A court abuses its discretion only if its decision is arbitrary or capricious or based on a demonstrable error of law. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382; *People v. Jennings* (2005) 128 Cal.App.4th 42, 49.) We affirm the order if there is a factual and rational basis for the restitution award. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542; *Akins*, at p. 1382.)

B.  Analysis

   1.  Victims of Uncharged Offenses

Essapour contends the trial court erred in awarding restitution to 19 victims of uncharged offenses because the record does not support a finding that his conduct was related to the victims' losses; he was not involved in an overarching conspiracy; and even if there was an overarching conspiracy, he cannot be liable for the loans transacted prior to the time he joined the conspiracy.  As we shall explain, we conclude the trial court erred in holding Essapour responsible for restitution to victims of uncharged offenses whose loans were transacted before Essapour was involved in a conspiracy with his codefendants.  We reject Essapour's remaining contentions.

Relying substantially on *People v. Meneses* (2008) 165 Cal.App.4th 1648 (*Meneses*), Essapour argues he cannot be responsible for restitution to all victims because each loan transaction was an individual conspiracy rather than part of a larger conspiracy involving the other loans.  In *Meneses*, the defendant was convicted of multiple offenses related to his participation in a scheme to defraud insurance companies.  (*Id.* at p. 1651.) He was accused of obtaining stolen accident reports, using information from those reports to contact accident victims, referring the victims to attorneys and chiropractors for which he collected fees, and encouraging the victims to file false claims with various insurance companies.  (*Ibid.*)  The court found the evidence did not support a single conspiracy because "[t]he only common element i[n] each conspiracy was defendant himself."  (*Id.* at p. 1671.)  In contrast, in this case, Essapour was not the only common element in each transaction.  Rather, the mechanics of each transaction, the individuals and companies

7

involved, defendants' motives, and the types of losses suffered by the victims were largely the same or related in some manner. The evidence reveals that Essapour and his codefendants were involved in an ongoing scheme to deceive homeowners into refinancing their mortgages so that the defendants could obtain substantial fees and commissions. Essapour and his codefendants worked together using their multiple companies to achieve an improper purpose. Accordingly, we conclude the trial court did not err in finding that this scheme was one large overarching conspiracy rather than small individual conspiracies as to each homeowner.

We next consider whether Essapour should be required to pay restitution to victims whose losses occurred before he joined the conspiracy. The prosecutor conceded that Essapour did not join the conspiracy until June or July 2008. This concession was supported by the evidence, which indicated that Essapour's involvement started in June 2008 when he was involved in a loan refinance for Gary and Marvel Sheller. Although the exact date of Essapour's involvement is not clear, we can infer from the evidence that it was as early as the first week of June 2008. Despite these facts, the trial court found Essapour was jointly and severally responsible for restitution to all victims with settlement loan dates on or after November 23, 2007. The selection of this date is not supported by the record and appears to be arbitrary. We find no evidence in the record connecting Essapour to the loan transactions that occurred prior to June 2008. Thus, there is no factual or rational basis for the court's award. (*People v. Marks* (1988) 45 Cal.3d 1335, 1345 ["A conspirator cannot be held liable for a substantive offense committed pursuant to the conspiracy if the offense was committed *before* he joined the conspiracy."].)

8

Further, the court's order is not directed at deterring future criminality because for the order to have a rehabilitative effect, "it must directly relate to the crime the defendant has committed." (*People v. Goulart*, *supra*, 224 Cal.App.3d at p. 79.)   In this case, we cannot say the court's order related directly to the crimes Essapour committed because there is no basis to connect him to the offenses committed prior to June 2008.  Thus, we conclude the court abused its discretion by choosing an arbitrary date to commence Essapour's restitution responsibility.

Without going into the details of the loans transacted with each victim of the 19 uncharged offenses, we find the trial court erred in requiring Essapour to pay restitution to the victims who had loan settlement dates before June 2008.  These victims were Akinsette, Benton, Bush, Jones, Jordan, Lenz, Mejia, Monteleone, Powers, and Sanchez. Accordingly, the restitution order is reversed as to those victims.

2.  Victims of Offenses Charged Only Against Dadar and Bakhtiar

Essapour argues the trial court abused its discretion in ordering him to pay restitution to five victims related to offenses charged only against Dadar and Bakhtiar. These victims included Battistone, Lee, Louis, D. Smith, and R. Smith.  Again without going into the details of each loan, it appears that four of the five loans were transacted between December 2007 and May 2008, which was before Essapour joined the conspiracy. Those victims were Battistone, Lee, D. Smith and R. Smith.  For the reasons previously discussed, the order is reversed to the extent it requires Essapour to pay restitution to Battistone, Lee, D. Smith and R. Smith.

9

3. Victims of Dismissed Conspiracy Charges

Essapour argues the trial court abused its discretion by ordering him to pay restitution to two victims identified in conspiracy charges which were dismissed. These victims were DeJulio and Sevier. Both of these victims transacted loans with Bakhtiar, Dadar and their companies after Essapour joined the conspiracy. A conspirator need not personally participate in any of the overt acts associated with the conspiracy as long as he or she conspired to commit the crime and an overt act is committed by a coconspirator. (*People v. Morante* (1999) 20 Cal.4th 403, 417.) Throughout the duration of the conspiracy, the act of one conspirator is the act of all members of the conspiracy. (*People v. Hardy* (1992) 2 Cal.4th 86, 188.) Accordingly, there was a factual and rational basis for the trial court to hold Essapour jointly and severally responsible for restitution to DeJulio and Sevier. Further, we note that Essapour's guilty plea included a *Harvey* waiver, which permitted the court to consider the entire background of the case, including dismissed charges, in ordering restitution.

4. Victim Hilton

The trial court ordered Essapour to pay restitution to victim Hilton for two separate loan transactions. Essapour disputes the restitution order as to the first of the two loans. The People argue, and we agree, that Essapour forfeited this claim by stipulating that he was responsible for restitution for both of Hilton's loans.

At the restitution hearing, the People provided the court with a "Victim Restitution Appendix," which listed all of victims and the amounts they were seeking in restitution. Hilton was identified as victim 10 and 11 on the appendix, representing his two loan

10

transactions. During the hearing, Essapour stated that he was not contesting restitution to "Victim 10 and 11, Mr. Hilton." If Essapour was disputing his responsibility for one of the loans, he could have omitted that number in his stipulation. He did not do so. Thus, we conclude Essapour forfeited his claim as to victim Hilton.

5. Victim Tennant

Essapour argues the trial court abused its discretion by ordering him to pay restitution to victim Tennant (one of the 19 victims of uncharged offenses) because there is nothing in the record supporting an inference that Tennant suffered losses as a result of his conduct or the conduct of his codefendants. We agree.

The evidence before the trial court indicated that Tennant refinanced her loan with Countrywide Bank and that institution received fees from the transaction. There is no reference to Essapour, his codefendants, or any of their companies in relation to Tennant's loan. The Attorney General argues there is sufficient evidence in the record to connect Essapour to Tennant's loan transaction because in a statement to the probation officer "Mrs. Tennant indicated that she [was] angry about what happened. She said she had to do a loan modification and had to pay extra fees because of the instant offense. She said the total amount of fees she was charged was $25,000." However, Tennant did not state that defendants were in any way involved in her loan. Without some kind of evidence suggesting that Tennant's loan was part of defendants' fraudulent loan scheme, we conclude the trial court abused its discretion in ordering Essapour to pay restitution to Tennant.

11

## II. *Calculation Error*

Essapour contends the trial court erred by double counting closing costs and prepayment penalties in the restitution awards. The Attorney General concedes and we agree that the trial court double counted those amounts.

In calculating the amount of restitution owed to the victims, the trial court used the following formula: "New Loan Amount – Previous Loan Amount + Payment differential from settlement date of loan up to July 2012 = RESTITUTION." Thereafter, the trial court added certain variable amounts including fees to refinance the loan and prepayment penalties. Adding these refinance fees and prepayment penalties, however, was an error because those amounts were already included in the "New Loan Amount." Accordingly, the trial court used a flawed method to calculate restitution and the matter must be remanded for the trial court to correct any double counting of closing costs and prepayment penalties.

Lastly, we reject Essapour's argument that the trial court should not have awarded restitution to two homeowners, Benton and Mosqueda, who refinanced out of their fraudulent loans because those victims were no longer obligated to pay the fraudulent loan. Homeowners reported suffering monetary losses as a result of defendants' loan scheme. Essapour, however, failed to provide evidence establishing that these victims' losses were remedied when they refinanced their loans. Accordingly, we conclude the trial court did not abuse its discretion in ordering Essapour to pay restitution to these victims.

DISPOSITION

The restitution order is reversed to the extent that it requires Essapour to pay restitution to victims Akinsette, Benton, Bush, Jones, Jordan, Lenz, Mejia, Monteleone, Powers, Sanchez, Battistone, Lee, D. Smith, R. Smith, and Tennant.  The matter is remanded to the trial court to recalculate its restitution order to eliminate double counting of closing costs and prepayment penalties.  In all other respects the judgment is affirmed.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.