Filed 8/31/15  P. v. Paswaters CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GREGG PASWATERS,<br><br>        Defendant and Appellant. | E062545<br><br>(Super.Ct.No. FSB1203891)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

David K. Rankin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Gregg Paswaters pled guilty to grand theft of personal property (count 1, Pen. Code § 487, subd. (a))[1] and admitted he had suffered a prior strike

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

conviction (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)). The court sentenced defendant to an aggregate term of six years' incarceration as stipulated in his plea agreement.

After defendant filed the notice of appeal, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436, and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case and identifying six potentially arguable issues: (1) whether defendant was advised of his trial rights and the consequences of his plea; (2) whether there was a factual basis for the plea; (3) whether defendant received the agreed upon sentence; (4) whether defendant received the correct amount of custody credits; (5) whether the court imposed the proper fines; and (6) whether the victim restitution award is supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In March 2011, defendant and his wife attended funeral services at a Hispanic church. Defendant's wife told the congregation she was an immigration attorney whom God had told to help her people. She stated she decided to do so by helping the congregation members obtain legal citizenship. Defendant's wife requested the congregation members complete a form and send her copies of personal documents, such as tax information, residency cards, drivers' licenses, passports, marriage licenses, Social Security cards, photographs, and their children's birth certificates. She also requested payments of between $125. and $3,900. for each case to pay what she said were

2

immigration fees and/or reduced work rates. The victims sent forms and blank money orders or cash, on defendant's wife's instructions, to a post office box.

Defendant sat next to his wife when she would speak about the immigration process to some of the victims. One victim also received text messages from defendant on behalf of defendant's wife. Defendant's wife had two victims deposit money directly into defendant's bank account. In October 2011, none of the victims had received any immigration papers and defendant's wife could no longer be reached at the telephone number she had provided.

A Sheriff's Deputy met with members of the church on November 23, 2011, and identified 42 total victims. The total calculated loss was $43,000. The deputy ran several versions of defendant's wife's name and came up with a driver's license and address. He took photographic lineups of defendant and his wife and showed them to the victims. Nineteen victims positively identified defendant's wife. Seventeen victims positively identified defendant. Defendant's wife was not a licensed attorney.

The People charged defendant and his wife by felony complaint with four counts of grand theft of the personal property of four specified victims (count 1, § 487, subd. (a).[2] The People further alleged defendant had sustained four prior strike convictions (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and two prior prison terms after which he had failed to remain free from custody for five years (§ 667.5, subd. (b)).

---

[2] Defendant's wife is not a party to this appeal. The People also charged defendant's wife with misdemeanor unauthorized practice of law (count 5, Bus. & Prof. Code § 6126, subd. (a)).

On October 28, 2014, defendant signed a plea agreement providing that he would plead guilty to the count 1 offense and admit one prior strike conviction allegation in return for a sentence consisting of the upper term of three years on the count 1 offense doubled pursuant to the prior strike conviction. Defendant agreed to waive his presence at a restitution hearing to be held in the future. The agreement reflects defendant would receive a total of 1532 days of custody credits. Defendant initialed the provisions of his plea agreement, which advised him of his trial rights and the consequences of his plea. Defendant initialed a provision in the agreement reflecting that he waived his rights to dispute the court's consideration of any facts regarding cases the People agreed not to file when the court ordered restitution.

Defendant signed the agreement indicating he had read the agreement, discussed it with his counsel, and understood its provisions. Defense counsel signed the agreement reflecting he had explained the contents of the agreement to defendant.

On the same date, the court took defendant's plea. The court asked defendant if he had personally initialed the boxes on his plea form "after reading, understanding and discussing, each paragraph with your attorney?" Defendant responded he had. The court asked if defendant understood everything on the form. Defendant responded he did. The court asked defendant if he understood that "by pleading you are giving up certain rights. You are giving up your right to a preliminary hearing and your Constitutional rights to a speedy public trial by jury, to have your attorney cross-examin[e] witnesses testifying against you, to bring in witnesses or evidence on your behalf and to remain silent?"

4

Defendant responded he understood and was willing to give up those rights in order to enter his plea.

The court explained that the plea agreement provided defendant would plea to one count of grand theft and admit one prior strike conviction. In return, he would receive a sentence of six years' imprisonment with a total credit for time served of 1532 days. Defendant indicated he understood. The court informed him that restitution would be reserved for a future hearing at which defendant would waive his presence. Defendant stated he understood. The court asked if defendant understood he would be limited to 20 percent good time credits. Defendant responded he understood.

The court asked if anyone had made any other promises to defendant to get him to enter a plea. Defendant responded that no one had. The court asked if anyone had made any threats to get him to plead guilty. Defendant answered that no one had. The court asked if defendant was under the influence of anything that would affect his ability to understand the plea agreement. Defendant responded that he was not. The court asked if defendant had sufficient time to discuss the case with his attorney. He responded that he had.

The court asked if defendant understood "all of your rights, penalties, punishments, future consequences[,] and potential defenses?" Defendant responded that he did. The court asked him whether he understood the possible immigration consequences of his plea. Defendant stated he did. The court asked defendant's counsel if he felt he had sufficient time to discuss the plea agreement with defendant and whether

he was satisfied defendant understood everything in the plea agreement. Defendant's counsel responded he had sufficient time to discuss the agreement with defendant and was satisfied defendant understood it.

The court expressly found defendant had read and understood the plea agreement, the nature of the charge and allegation to which defendant was pleading and admitting, the consequences and punishments of the plea and admission, and his Constitutional rights. The court expressly found defendant had "knowingly, intelligently, freely and voluntarily, waived each of his . . . Constitutional rights."

Defendant entered a plea of guilty and admitted a prior strike conviction for first degree residential burglary in 1988. Defense counsel stipulated the police reports would provide a factual basis for the plea. On the People's motion, the remaining counts and allegations were dismissed. The court further found defendant had entered his plea "in open court. The plea[ was] entered freely, voluntarily, knowingly[,] and intelligently . . . and there is a factual basis for the plea, which the Court will accept and confirm."

The court imposed sentence and awarded custody credits as stipulated in the plea agreement. With respect to fines and fees, the court ordered the following: "there are no appointed counsel fees; no ability to pay for court costs; . . . $60 court security fee; $300 [sections] 1202.4 and 1202.45 fine, the latter is stayed pending successful completion of supervision; [and] $10 plus [penalties] and [assessments] pursuant to [section] 1202.45 . . . ." The court reserved an award of restitution for preparation of a memorandum due

6

before the restitution hearing scheduled for December 16, 2014. Defendant orally waived his appearance at the restitution hearing.

The restitution memorandum dated December 8, 2014, listed 50 different amounts of restitution to be awarded to 62 victims totaling $59,869.40.[3] The probation officer also recommended an additional award of $600.00 to the church, should its pastor so request as "the church reimbursed the defendants for mileage, meals[,] and overnight stays at the local hotel when they worked on cases . . . . On December 16, 2014, the court indicated receipt of the restitution memorandum and referred the matter back to the probation department to provide further documentation containing statements by the "numerous" victims as to how they suffered their losses. On the same date, defendant's counsel filed the instant appeal challenging the "sentence or other matters occurring after the plea that do not affect the validity of the plea."

On January 21, 2015, the probation officer compiled an additional restitution memorandum after obtaining and attaching copies of receipts and money orders totaling 66 pages. The probation officer recommended a total restitution award of $66,266.84 noting "that some of the victims have a higher restitution amount due to the fact that they turned over their copies . . . ." The probation officer additionally recommended the court retain jurisdiction over restitution for what appears to be additional victims and victims already listed, but who had yet to fully document their purported loses.

---

[3] The probation officer listed one amount for each family regardless of the number of victims within each family.

At the restitution hearing on February 10, 2015, defense counsel indicated "we've had an opportunity to look over the memo regarding [defendant]. The numbers appear to be correct, and we're going to submit on the memo." The court ruled that, "Rather than reading he approximately 30 to 40 [*sic*] orders, I will simply adopt the amounts listed on Pages 2 and 3 of the memo [filed] today's date if that's okay with all of the parties." The parties agreed and the court so ordered restitution.

## DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, which he has not done. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 [Fourth Dist., Div. Two] [Failure to object to the amount of restitution forfeits the issue on appeal]; accord *People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Goulart* (1990) 224 Cal.App.3d 71, 79-82 [Execution of *Harvey* waiver waives the defendant's right to challenge restitution with respect to charges not filed by the People].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

KING
J.

MILLER
J.