Filed 2/14/24  P. v. Watson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CONTE LESEAN WATSON,<br><br>    Defendant and Appellant. | C097851<br><br>(Super. Ct. No. CR2021-2515) |

Over the course of four days, defendant Conte Lesean Watson took J.G. at gunpoint, assaulted her, threatened her, stole her money, and forced her to become a prostitute.

Defendant pleaded no contest to pandering (Pen. Code, § 266i, subd. (a)(2) [statutory section citations that follow are found in the Penal Code unless otherwise stated]) and possession of a firearm by a felon (§ 29800, subd. (a)(1)).

1

The trial court ordered defendant to pay $3,956 in direct victim restitution, including $2,958 for stolen money.  On appeal, defendant argues that the trial court abused its discretion in awarding $2,958 in restitution, because the theft was not a proximate cause of the pandering, defendant did not stipulate to theft as part of the pandering, he did not enter a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754), he did not receive probation, and he was not convicted of theft.  Defendant further contends that this error violated his due process rights.  Defendant also asserts that the trial court must amend the abstract of judgment to accurately reflect his total credits and the correct Penal Code section corresponding to the pandering conviction.

We disagree that the trial court abused its discretion or violated defendant's due process rights when it awarded the $2,958 in restitution.  We agree, however, that the trial court must correct the abstract of judgment.  Accordingly, we will direct the trial court to prepare an amended abstract of judgment and forward the amended abstract to the Department of Corrections and Rehabilitation.  We otherwise affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

In February 2021, defendant and J.G. began dating.  A few months later, they moved to Fort Worth, Texas.  When J.G. left and returned to California, she discovered that her home in Rancho Cordova had burned down during her absence.  Defendant believed that he was entitled to the insurance settlement because he paid for the home insurance policy and for J.G.'s rent in Texas a couple of times.  J.G. disagreed.

On September 9, 2021, defendant found J.G. at her friend's house in Sacramento.  Defendant pointed a gun at J.G. and threatened to kill her.  He told her to get her things and that they were leaving.

J.G. believed that defendant was capable of killing her, and defendant had threatened to do so in the past.

2

Defendant took J.G.'s car keys, purse, and cell phone. Defendant then made J.G. drive to the Bay Area and check into a motel room. Defendant went through J.G.'s phone; accused her of having sex with other people; punched her in the temple, arm, and leg; and threatened to break her arm. They then left to go to defendant's friend's house. J.G. did not want to go anywhere with him, but defendant threatened to hurt her. Defendant also told J.G. to send him the fire insurance settlement through Cash App, and she sent him $2,958.

After spending time with defendant's friend, J.G. and defendant went to another motel on September 10, 2021. Again, defendant went through J.G.'s phone and hit her several times in the head with his hand. Then, defendant told her to perform oral sex on him. J.G. did not want to but acquiesced. After defendant got an erection, he told J.G. to lay down on her belly. Defendant told J.G. that since she was having vaginal sex with other men, he was going to have anal sex with her. J.G. did not consent and cried during the anal sex.

On September 11, 2021, they changed hotels. Defendant went through J.G.'s phone again and beat her. Because defendant could not withdraw money from his own account, he sent J.G. money through Cash App so that she could withdraw the money from her account. J.G. made these withdrawals at defendant's request until she exceeded her daily withdrawal limit. Then, defendant took J.G. fishing and to a casino. At the casino, defendant took the car keys and told her that he would burn her, the car, and her mother-in-law and children if she left in the car while he was inside. J.G. also said that she did not leave because she wanted defendant to go to jail.

After leaving the casino, they checked into a motel. In the motel room, defendant told J.G. that it was time to make money and told her to post advertisements offering sex for money. Defendant knew that J.G. previously worked as a prostitute. J.G. did not want to post advertisements of herself, but defendant told her to shut up and that she had been having sex for free anyway.

A man responded to the advertisement, and J.G. had sex with him for $100. The man paid J.G. the $100 through Cash App, and she immediately transferred the money to defendant with an additional $100. J.G. said she sent the $200 to defendant because he had already taken all of the money out of her account, he was going to want all of her money anyway, and she did not want to fight with him. After the man left, defendant wanted J.G. to continue to have sex for money. J.G. told defendant that she had another date coming, so he left the motel room. Defendant left J.G.'s cell phone in the room, and she texted her sister for help. J.G.'s sister called the police, and officers arrested defendant at the motel.

Defendant pleaded no contest to pandering from September 9, 2021, through September 13, 2021, and possession of a firearm by a felon. Defendant also admitted the personal use of a firearm enhancement attendant to the pandering charge and a prior strike.

The trial court sentenced defendant to an aggregate term of 10 years 4 months. J.G. requested restitution, which included $2,958 in stolen money through a Cash App transaction on September 9, 2021. The People included a receipt of the Cash App transaction in its restitution brief.

At the restitution hearing, defense counsel argued that defendant did not owe the $2,958 in stolen money because theft is not an element of pandering, defendant was not convicted of theft, and there was no *Harvey* waiver. The People argued that pandering means encouraging someone to be a prostitute, and defendant encouraged J.G. to be a prostitute by taking her money. The trial court awarded the $2,958 restitution.

## DISCUSSION

### A. <u>Victim</u> <u>Restitution</u>

On appeal, defendant contends that the trial court abused its discretion in awarding the $2,958 victim restitution for stolen money. Specifically, defendant argues the trial

court could not award the $2,958 restitution because he did not enter a *Harvey* waiver, he did not receive probation, he was not convicted of theft, he did not stipulate to theft as part of the pandering, and pandering was not a proximate cause of the loss. Defendant also asserts that this error violated his due process rights by imposing a civil liability that was unrelated to his criminal conduct.

"The California Constitution gives crime victims a right to restitution and, consequently, requires a court to order a convicted wrongdoer to pay restitution in every case in which a crime victim suffers a loss. (Cal. Const., art. I, § 28, subd. (b)(13)(B).) To implement this requirement, section 1202.4, subdivision (f), generally provides that 'in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.' " (*People v. Sy* (2014) 223 Cal.App.4th 44, 62.) While section 1202.4 "limits restitution to losses caused by the criminal conduct for which the defendant was convicted," the court may still impose restitution if that conduct was the proximate cause of the victim's economic loss. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1246; *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1395-1396.)

Defendant is correct that because he was not convicted of theft, did not agree to a *Harvey* waiver allowing the sentencing judge to consider unfiled charges (see *People v. Goulart* (1990) 224 Cal.App.3d 71, 80), and was sentenced to state prison as opposed to probation, the trial court could only impose restitution for losses caused by the criminal conduct for which he was convicted. (*People v. Lai, supra,* 138 Cal.App.4th at p. 1246.) Accordingly, the propriety of the restitution award rests on whether pandering was a proximate cause of J.G.'s loss.

In determining whether the defendant's conduct was the proximate cause of the loss, the court applies the "substantial factor" test. (*People v. Foalima*, *supra*, 239

5

Cal.App.4th at p. 1396.) Under this test, the defendant's conduct is the proximate cause of the loss if the defendant's conduct was a substantial factor in bringing about the loss. (*Ibid*.) Simply put, the test is whether the victim would have incurred losses had the defendant committed no crime. (*Id*. at p. 1397.) The test is a broad one and requires only that the contribution of the defendant's conduct be more than negligible or theoretical. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321.)

Here, defendant pleaded no contest to pandering J.G. from September 9, 2021, through September 13, 2021. Under section 266i, subdivision (a)(2), pandering means that defendant "cause[d], induce[d], persuade[d], or encourage[d] [J.G.] to become a prostitute" "[b]y promises, threats, violence, or by any device or scheme." To induce J.G. to become a prostitute, defendant made J.G. feel so powerless that she would do whatever he wanted even if it was not what she wanted to do. Defendant's taking $2,958 from J.G. was an essential component of his pandering scheme. Over the course of four days, defendant exercised total control over J.G. through physical and psychological abuse. He took J.G. against her will at gunpoint, berated her, physically and sexually assaulted her, and threatened her and her family. Defendant took J.G.'s car keys, purse, and phone; leaving her with no means to leave or get help. Defendant also forced J.G. to give him money that he transferred to her account and to give him the insurance settlement money in the amount of $2,958, which was all the money in her account.

Feeling trapped, J.G. had no option but to acquiesce to whatever defendant wanted. So, when defendant told J.G. to post ads to make money she did so even though she did not want to. J.G. felt so powerless that she even transferred an additional $100 with the money from prostitution to defendant, because she did not want to fight him anymore and he had already taken the rest of her money. Thus, defendant's taking of $2,958 from J.G. was part of a single course of conduct for pandering.

Defendant's pandering was a substantial factor in bringing about J.G.'s loss of $2,958. Therefore, the restitution award was not an abuse of discretion.

6

As we have explained, because the trial court's award of the $2,958 was supported by evidence and was the proximate cause of J.G.'s loss, it was statutorily authorized. Accordingly, defendant's contention that the restitution award violated due process because it exceeded statutory authorization by being unrelated to his criminal conduct necessarily fails.

B.      Amendments to the Abstract of Judgment

Defendant next argues that the trial court must correct the abstract of judgment to reflect his total credits and correct the Penal Code section corresponding to his pandering conviction. We agree the abstract of judgment contains these two clerical errors. Defendant pleaded no contest to pandering under section 266i, subdivision (a)(2). However, the abstract of judgment reflects that defendant was convicted of pandering under section 261i, subdivision (a)(2). The trial court granted defendant 263 days of presentence custody credits, comprised of 229 actual days and 34 days of conduct credit. The abstract of judgment reflects only 229 days of presentence custody credits. We will direct the trial court to correct these clerical errors. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].)

DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment consistent with this opinion and forward the amended abstract to the Department of Corrections and Rehabilitation.

                                                
_____
HULL, Acting P. J.

We concur:

_____
MAURO, J.

_____
KRAUSE, J.

8