Filed 11/19/21  P. v. Chaidez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D078023 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE399847) |
| GUILLERMO SALVADOR CHAIDEZ, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Robert O. Amador, Judge.  Vacated in part and affirmed as modified.

Charles R. Khoury Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Guillermo Salvador Chaidez pled guilty to three felonies, including an attempted armed robbery that resulted in the victim's death. He appeals the trial court's order making him jointly and severally liable to the victim's father for $1,400 in cremation expenses. He also challenges all fines, fees, and assessments imposed by the trial court under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We reject these challenges, modify the judgment to vacate one of the imposed fees in part based on a recent change in the law, and affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Facts*[1]

Chaidez, Adrian O., Josue O., and J.C.[2] were active members of the Spring Valley Locos, a criminal street gang. Chaidez and J.C. are also brothers. On March 20, 2020, Victoria Alvarez drove all four individuals to Imperial Beach where the group committed an armed robbery of a 7-Eleven store. Adrian, Josue, and J.C., all juveniles, entered the store while Chaidez was the lookout. Josue demanded money from the store clerk at gunpoint. The clerk gave him approximately $500 in cash. J.C. walked around the

---

[1] Chaidez was convicted by his guilty plea, and there was no preliminary hearing. Our factual summary is derived from the stipulated factual basis for Chaidez's guilty plea and the probation report, which in turn relied on reports of the San Diego County Sheriff's Department and El Cajon Police Department.

[2] Pursuant to rule 8.401(a)(2) of the California Rules of Court, we refer to juveniles Adrian O. and Josue O. by first name and last initial. We refer to juvenile J.C. by initials only in the interest of protecting his anonymity. (*Ibid.*)

2

counter and took approximately 20 packs of cigarettes. Adrian stood by the door and yelled at the clerk to hand over the money. The juveniles then fled the store and got into the awaiting vehicle with Alvarez and Chaidez.

Approximately two hours later, the group struck another 7-Eleven store in El Cajon. Alvarez again drove and Chaidez again was the lookout. Adrian, Josue, and J.C. entered the store, and when the victim,[3] a store clerk, emerged from the back storage area, they approached him. Adrian pointed a handgun at the victim and demanded that he open the cash register. When the victim did not immediately comply, Adrian shot him in the chest and continued to demand that he open the cash register. The victim stepped back and collapsed to the floor. Josue left the store and before J.C. and Adrian exited the store, J.C. told Adrian to shoot the victim again. Adrian walked back toward the victim lying wounded on the floor and shot him again.

The victim was shot six times, including to his chest, back left shoulder, right upper thigh, and left upper thigh. He was taken to a hospital, where he was pronounced dead.

Upon their arrest, Chaidez's and the juveniles' cell phones were seized. Multiple photographs were found on the cell phones of Chaidez, Alvarez, J.C., and Adrian holding and posing with firearms. Chaidez's phone in particular contained a photograph taken shortly after the armed robbery of the first 7-Eleven store. It showed a male sitting in Alvarez's car holding a pistol and several small bills.

On May 20, 2020, while in custody at the San Diego Central Jail following his arrest for the above offenses, Chaidez and two fellow inmates

---

[3] We omit the victim's name to provide his family with privacy.

assaulted another inmate. The victim of the assault sustained scratches to his head and right armpit.

## II.

### *Chaidez's Guilty Plea*

Chaidez was charged in an amended felony complaint with three felony counts.[4] In count 2, he was charged with robbery (Pen. Code,[5] § 211) of the first 7-Eleven store, with allegations he committed the offense to benefit a criminal street gang (§ 186.22, subd. (b)(1)) and a principal used a firearm in commission of the offense (§ 12022.53, subds. (b), (e)(1)). In count 3, he was charged with attempted robbery (§§ 211, 664) of the second 7-Eleven store, with allegations he committed the offense to benefit a criminal street gang (§ 186.22, subd. (b)(1)), a principal intentionally used a firearm (§ 12022.53, subds. (b), (e)(1)), and a principal intentionally discharged a firearm causing death (§ 12022.53, subds. (d), (e)(1)). In count 4, he was charged with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) based on the jail assault.

On June 26, 2020, pursuant to a negotiated plea agreement, Chaidez pled guilty to all three counts in exchange for a stipulated aggregate prison sentence of six years.[6] Chaidez also admitted the allegations that a principal

---

[4]    Alvarez, the driver, was jointly charged in the felony complaint with the same counts as Chaidez, while the three juveniles were charged separately in Juvenile Case H9551.

[5]    All further statutory references are to the Penal Code, unless otherwise indicated.

[6]    The plea agreement provided that Chaidez would be sentenced to a stipulated six-year prison sentence, consisting of the upper term of five years on count 2, one year consecutive on count 4 (which is one-third the middle term), and three years concurrent on count 3, and punishment on all gang

4

used a firearm in the commission of the armed robbery (count 2) and, relevant here, a principal discharged a firearm causing death in the attempted robbery (count 3). He further admitted the gang enhancements attached to counts 2 and 3.

Chaidez, with the assistance of counsel, executed a written plea form which contained a *Harvey*[7] waiver, stating: "The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed, or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." Chaidez further stipulated to a factual basis for his guilty plea and admissions, including that he aided and abetted the armed robbery, and aided and abetted the attempted armed robbery, during which a principal discharged a semi-automatic firearm causing death.

At the change of plea hearing, Chaidez confirmed he had an opportunity to review all terms and conditions in the change of plea form with his counsel and that he understood them. He further confirmed he had no questions "whatsoever" about the plea form itself. Chaidez's counsel concurred in the plea and confirmed he believed that Chaidez made a knowing, intelligent, and voluntary waiver of his constitutional rights and understood the consequences of his plea. One such consequence, as he expressly acknowledged in the plea form, was that he "must pay full restitution to all victims." Accordingly, the trial court accepted Chaidez's plea, finding there was a factual basis for the plea and that Chaidez had

---

and firearm enhancements would be stricken. In exchange for his guilty plea, the People dismissed two other criminal cases pending against Chaidez (nos. CE400188 and C396831), the facts of which are not before us.

[7]    *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

5

made a knowing and intelligent waiver of his constitutional rights and understood the consequences of his plea.

The trial court sentenced Chaidez to the stipulated six-year prison sentence and ordered him jointly and severally liable to the father of the victim killed during the attempted robbery in count 3 for $1,400 in cremation costs, as victim restitution pursuant to section 1202.4, subdivision (f).[8] The court further imposed a restitution fine of $3,600 (§ 1202.4, sub. (b)), a $3,600 parole revocation fine (§ 1202.45), a court security fee of $120 (§ 1465.8), a court critical needs fee of $90 (Gov. Code, § 70373), and a criminal justice administration fee of $154 (Gov. Code, § 29550, et seq.). This timely appeal followed.

## DISCUSSION

### I.

### *Victim Restitution Was Properly Ordered*

Chaidez appeals the trial court's order making him jointly and severally liable to the deceased victim's father for $1,400 in cremation expenses. At the sentencing hearing, defense counsel objected that Chaidez could not be required to pay victim restitution to the father because he "was not convicted of the homicide, or charged with the homicide" that resulted in his son's death. The prosecutor responded that defense counsel was overlooking that Chaidez "admitted the vicarious infliction of death or G.B.I." under section 12022.53, subdivision (d) and thus, "there is no nexus issue whatsoever." The trial court agreed with the prosecutor and concluded "[t]here is a nexus based on the [section] 12022.53(d) allegation."

---

[8] The trial court ordered that Chaidez was jointly and severally liable for victim restitution with Alvarez, Adrian, Josue, and J.C.

6

Chaidez contends the trial court erred and that an insufficient causal nexus existed to support requiring him to pay victim restitution based on the victim's death. He argues that (1) he "was not charged with th[e] killing" of the victim, and (2) "other than the probation report," which stated that he served as a lookout while the three juveniles committed the attempted robbery and shot the clerk to death, "there was no evidence presented as to how appellant actually *caused* the death of the clerk." For reasons we shall discuss, we disagree with each position.

We review a restitution order for an abuse of discretion. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305.) The following principles inform our review.

"The California Constitution expresses 'the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.' (Cal. Const., art. I, § 28, subd. (b)(13)(A).) 'Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.' (Cal. Const., art. I, § 28, subd. (b)(13)(B).) [¶] Section 1202.4 implements this constitutional mandate. That statute expresses the Legislature's intent 'that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime.' (§ 1202.4, subd. (a)(1).)" (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1395.) "Courts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247; § 1202.4, subd. (f)(3).)

7

" ' "A victim' s restitution right is to be broadly and liberally construed."
[Citation.] " 'When there is a factual and rational basis for the amount of
restitution ordered by the trial court, no abuse of discretion will be found by
the reviewing court.' " ' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26
(*Millard*).) "[A] restitution order 'resting upon a " 'demonstrable error of
law' " constitutes an abuse of the court's discretion.' " (*Ibid.*) And " '[i]n
reviewing the sufficiency of the evidence [to support a factual finding], the
" 'power of the appellate court begins and ends with a determination as to
whether there is any substantial evidence, contradicted or uncontradicted,' to
support the trial court's findings." ' " (*Ibid.*) " 'Further, the standard of proof
at a restitution hearing is by a preponderance of the evidence, not proof
beyond a reasonable doubt. [Citation.] "If the circumstances reasonably
justify the [trial court's] findings," the judgment may not be overturned when
the circumstances might also reasonably support a contrary finding.' " (*Ibid.*)

These principles compel us to conclude the trial court did not abuse its
discretion in ordering Chaidez to pay victim restitution based on the victim's
death. We begin with Chaidez's contention that the order was erroneous
because he "was not charged with th[e] killing" of the victim. This contention
lacks merit, for two reasons.

First, Chaidez's negotiated plea agreement included a *Harvey* waiver
that expressly allowed the judge to consider his "prior criminal history and
the entire factual background of the case, including *any unfiled*, dismissed, or
stricken charges or allegations or cases when granting probation, ordering
restitution or imposing sentence."9 (Italics added.) A defendant who signs

---

9 As both parties overlooked the existence of a *Harvey* waiver in
Chaidez's plea agreement, we solicited supplemental briefing from the parties
regarding the effect of this waiver on the scope of conduct the court could
consider in ordering restitution.

such a waiver agrees to allow the sentencing judge to consider unfiled charges. (*People v. Snow* (2012) 205 Cal.App.4th 932, 937; see also *People v. Goulart* (1990) 224 Cal.App.3d 71, 80 (*Goulart*) ["A defendant who signs the typical waiver form agrees to allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges."].) And a court may make a valid restitution order under a *Harvey* waiver when imposing a prison sentence instead of granting probation. (See *People v. Beck* (1993) 17 Cal.App.4th 209, 212, 214–216 [defendant sentenced to prison and restitution ordered on the basis of dismissed counts pursuant to a *Harvey* waiver].) Thus, Chaidez is incorrect insofar as he asserts the failure to charge him with the victim's homicide precluded the court from considering his criminal acts that resulted in the victim's death when ordering restitution.

In his supplemental brief on this issue, Chaidez cites *People v. Weatherton* (2015) 238 Cal.App.4th 676, 679 (*Weatherton*), and appears to argue that *Weatherton* established a rule that a *Harvey* waiver is not valid if the judge does not explain it to the defendant during the change of plea hearing. Chaidez suggests the court failed to comply with this purported requirement, because during his change of plea hearing, the judge stated, "[t]his is a stipulated six-year state prison commitment in the case" and "we're settling everything against you today for the six-year commit," but did not inform Chaidez "there would be any restitution issue." We disagree that *Weatherton* contains any such rule. Based on his citation to page 679 of the *Weatherton* opinion, it is apparent he is relying on the procedural background section of the opinion, which recited that the trial judge had confirmed the terms of the defendant's *Harvey* waiver during the change of plea hearing. (See *Weatherton*, at p. 679.) The *Weatherton* court did not otherwise rely on

9

this procedural detail nor did it purport to create a rule that this judicial admonition was necessary.

Moreover, the record of the proceedings in this case supports the conclusion Chaidez did, in fact, have a reasonable expectation of being required to pay restitution based on uncharged conduct. He acknowledged in in the plea form that he "must pay full restitution to all victims." The *Harvey* waiver in his written plea agreement stated that "[t]he sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed, or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." Chaidez's initials were placed in a box next to this waiver. At the change of plea hearing, Chaidez agreed he had an opportunity to review all terms and conditions in the change of plea form, stated he understood them, and had no questions about the change of plea form itself. He further confirmed he gave his attorney authority to put his initials on the change of plea form and adopted them as his initials "with respect to the change of plea form and all purposes therein." The trial court found Chaidez's plea was freely and voluntarily made and had an adequate factual basis. The record thus reflects that Chaidez understood the *Harvey* waiver in his written plea agreement could result in unfiled charges being used as a basis for an order of restitution at sentencing. (See *Goulart, supra,* 224 Cal.App.3d at p. 80.) Accordingly, Chaidez's *Harvey* waiver was both valid and dispositive of his argument that the absence of a homicide or murder charge precluded the court from ordering him to pay victim restitution based on the victim's death.

Chaidez's contention fails for an additional reason independent of the *Harvey* waiver: as part of his plea, he admitted the allegation in count 3 charging him with violation of section 12022.53, subdivisions (d) and (e)(1).

10

Pertinent here, subdivision (d) of section 12022.53 provides that "any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, *personally and intentionally discharges a firearm and proximately causes* great bodily injury, as defined in Section 12022.7, or *death*, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (Italics added.) Chaidez stipulated the following facts existed to support his admission of this allegation: "[He] was a principal in the offense and in the commission of the offense at least one principal personally and intentionally discharged a semi-automatic firearm causing death or great bodily injury." Contrary to Chaidez's contentions otherwise, he was, in fact, charged and convicted of criminal conduct that resulted in the victim's death.

Chaidez's second claim of error in the victim restitution order is that "other than the probation report," which stated that he served as a lookout while the three juveniles committed the attempted robbery and shot the victim to death, "there was no evidence presented as to how [he] actually *caused* the death of the clerk." We see no basis for reversal in this argument.

" '[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' " (*People v. Baumann* (1985) 176 Cal.App.3d 67, 81 (*Baumann*); accord *People v. Brunette* (2011) 194 Cal.App.4th 268, 284.) " ' "This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution." ' " *(People v. Baker* (2005) 126 Cal.App.4th 463, 470.) And "[p]robation reports are among the permissible sentencing data the court may consider." (*Baumann*, at p. 81.) Thus, the trial court was entitled to rely on the probation report to support its order of restitution. We

11

further observe that the way Chaidez phrases his argument— "other than the probation report, there was no evidence presented as to how appellant actually *caused* the [victim's] death"— suggests he acknowledges the probation report does, in fact, contain evidence he caused the victim's death.

Setting aside Chaidez's apparent admission, on our own review of the underlying proceedings, we conclude the record contains substantial evidence supporting the trial court's restitution order.  For the order to be valid, the evidence needed to establish that Chaidez's criminal conduct proximately caused the victim's death.  "[U]nder the governing statute, '[t]o the extent possible, [a] restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct.' " (*People v. Jones* (2010) 187 Cal.App.4th 418, 425 (*Jones*), quoting § 1202.4, subd. (f)(3).)  *Jones* held that under this causation standard, a defendant is liable only for those losses proximately caused by the criminal act.  (*Jones,* at pp. 425–427.)  This proximate cause standard is based on, and imports, tort law concepts of causation, including principles of foreseeability and intervening cause.  (*Id.* at p. 425.)  Under this standard, " ' " ' "[t]he precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." ' " ' " (*Id.* at p. 427, quoting *People v. Cervantes* (2001) 26 Cal.4th 860, 871.)  Further, " ' " ' [a] defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause.  If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability.' " ' " (*Jones*, at p. 427.)

We easily conclude the record contains substantial evidence satisfying this causation standard. Substantial evidence includes circumstantial evidence and all reasonable inferences flowing therefrom. (See, e.g., *People v. Vang* (2001) 87 Cal.App.4th 554, 563.) The probation report revealed Chaidez served as a lookout in two successive armed robberies; the victim was killed during the second one. Chaidez's cell phone contained a photograph taken "shortly after" the first robbery depicting another male posing in Alvarez's car with a handgun and small bills. This evidence alone reasonably demonstrates Chaidez knew his cohorts in the successive robberies were armed with lethal force.

Chaidez suggests the evidence he served as a "lookout" was insufficient to support the conclusion his conduct was a proximate cause of the victim's death. We disagree. The evidentiary threshold required to support a restitution order is not high and is met so long as the order has a factual and rational basis. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) That Chaidez served as a lookout while his criminal associates completed an armed robbery is sufficient, on its own, to meet this standard. By standing watch, a lookout frees his associates to focus on and complete their criminal objective. This is a role with a sufficient causal relationship to the underlying crime to support an order of victim restitution. Moreover, the probation report's description of the manner in which the killing of the victim unfolded—an initial shot to the chest, a pause at the exit door, and a return to the victim's collapsed body followed by additional gunshots—lent further support to the conclusion the assailants were acting under the perception their conduct would not be interrupted such that they could take the time to turn back and deliberately shoot the victim again.

Further still, Chaidez stipulated as part of the factual basis for the section 12022.53, subdivision (d), allegation that he was "a principal" in the offense that led to the victim's shooting death. (See § 31 [providing that "principals" are "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed"].) All of these facts, together with the reasonable inferences flowing from them, served as substantial evidence Chaidez's criminal conduct was a proximate cause of the victim's death.

Accordingly, the trial court did not err in ordering Chaidez to pay $1,400 in victim restitution to the victim's father for the cremation expenses associated with his son's death.[10]

_____

10    At oral argument, Chaidez's appellate counsel asserted for the first time that the trial court's statement during the change of plea hearing that "[t]his is a stipulated six-year state prison commitment" altered the terms of his negotiated plea deal (i.e., so as to eliminate the possibility of restitution), and advocated for specific performance of the purportedly altered deal. It is a meritless position (see *People v. Labora* (2010) 190 Cal.App.4th 907, 916 [withdrawal of plea, not specific performance, is the remedy where sentence fails to comport with plea deal allegedly promised by court]), and oral argument is too late a stage to be raising it (*People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7 [declining to address argument raised for first time at oral argument]; *People v. Barragan* (2004) 32 Cal.4th 236, 254, fn. 5 [declining to address argument first raised in appellant's reply brief].)

14

## II.

### *Chaidez's Dueñas Challenge Fails*

Chaidez challenges the fines, fees, and assessments imposed by the trial court under *Dueñas*, *supra*, 30 Cal.App.5th 1157.[11] We conclude this challenge is largely forfeited, and otherwise lacks merit.

Defense counsel asserted a *Dueñas* objection at the sentencing hearing, but only to the recommended $3,600 restitution fine. Defense counsel's objection was as follows: "[U]nder restitution fine, the probation officer's recommending $600 a year. That's how she comes up to the number . . . 3,600. [¶] I'm asking the court to strike the restitution fine pursuant to the [*Dueñas*] case, and pursuant to the statutory language itself that would require the court -- or permit the court to strike the restitution fine. [¶] So I'm asking the court, both under the authority of [*Dueñas*], as well as the equal protection clause, and the due process clause, and the language in the statute itself, Penal Code section 1202.4(b), to strike the restitution fine." The trial court overruled this objection, reasoning that Chaidez was 18 years

---

11    "At the core of the *Dueñas* opinion is its holding that imposition of fines, fees or assessments without a hearing on ability to pay denies due process. It was that court's view it was the trial court's duty to hold a hearing and thus failure to seek a hearing did not result in forfeiture. Further, the court found that the burden to prove 'present' ability to pay was on the prosecution. Other courts, including this court, have disagreed with *Dueñas* on these key principles." (*People v. Keene* (2019) 43 Cal.App.5th 861, 863 (*Keene*).) The Supreme Court is currently considering the viability of *Dueñas* as it pertains to whether a trial court must consider a criminal defendant's ability to pay assessed fines and fees, and if so, which party bears the burden of proof. (*People v. Kopp* (2019) 38 Cal.App.5th 47 (*Kopp*), review granted on limited issues Nov. 13, 2019, S257844.) It appears from Chaidez's appellate briefs that he is asserting his *Dueñas* challenge in anticipation of our high court's decision in *Kopp*.

old and healthy, and had "the ability to earn while he is in the . . . state prison." It thus concluded "the [*Dueñas*] case does not affect the defendant."

On appeal, Chaidez asserts a *Dueñas* challenge not only to the $3,600 restitution fine imposed under section 1202.4, subdivision (b), but to all other fines, fees, and assessments imposed against him. He argues the trial court violated *Dueñas* because it failed to consider his ability to pay all such sums. However, because Chaidez's counsel did not object to any amounts other than the $3,600 restitution fine, he has forfeited the opportunity to challenge them on appeal. (See, e.g., *Keene, supra*, 43 Cal.App.5th at pp. 863–864 [failure to object in the trial court forfeits *Dueñas* challenge on appeal]; accord *People v. Washington* (2021) 61 Cal.App.5th 776, 800.)

As for Chaidez's preserved *Dueñas* challenge to the $3,600 restitution fine under section 1202.4, subdivision (b), we conclude that it fails. Chaidez is incorrect in arguing that the trial court imposed this fine without considering his ability to pay. It is plain from the record of the sentencing hearing that the trial court did, in fact, consider Chaidez's ability to pay this fine, and concluded that he could. The court specifically reasoned that his youth and good health supported the conclusion he could earn income while in prison. Chaidez's argument that the court failed to consider his ability to pay thus fails for the simple reason that it is refuted by the record.

Moreover, it is well settled that the trial court may rely on a defendant's ability to earn prison wages to find the defendant has the ability to pay fines and fees imposed. (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [court may consider defendant's ability to pay in the future, including "defendant's ability to obtain prison wages and to earn money after his release from custody"]; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505 [defendant did not show inability to pay $10,000

16

restitution fine simply because prison wages would make it difficult, it would take a long time, and the fine might never be paid]; *People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1377 [a trial court may consider the defendant's future ability to pay, including his ability to earn wages while in prison].)

In his opening brief on appeal, Chaidez did not argue or otherwise attempt to demonstrate that the trial court reached the wrong conclusion in determining he could pay a $3,600 restitution fine with income earned in prison. In his reply brief, Chaidez argues for the first time that "there is no proof that prison work is available during this period of time of COVID-19 lockdowns." We conclude this challenge to the court's reasoning has been forfeited. Chaidez could have presented this argument in the trial court or in his opening brief on appeal, but he failed to do so. (See *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"]; *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 ["In his reply brief, [defendant] raises other arguments for the first time. [Defendant] has forfeited these tardy arguments."].) Moreover, his assertion is presented baldly, without a citation to any material or authority that might support his factual contention that prison work is unavailable during the current pandemic. We need not consider "an argument raised in such perfunctory fashion[.]" (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [argument forfeited on appeal if not supported by analysis and authority].)[12] As we have no basis for

_____

[12] The People suggest that we analyze Chaidez's due process challenge under *Dueñas* as if it were an Eighth Amendment challenge and conclude the restitution order survives Eighth Amendment scrutiny. We decline to do so. At no time in the trial court or on appeal has Chaidez asserted a violation of his rights under the Eighth Amendment. Also, upholding the order as

concluding that the court committed a substantive or procedural error in imposing this fine, we leave it undisturbed.

## III.

*The Criminal Justice Administration Fee Shall Be Vacated in Part Pursuant to Government Code Section 6111*

As noted above, one of the fees imposed by the trial court at the sentencing hearing was a $154 criminal justice administration fee under Government Code sections 29550, 29550.1, and 29550.2. On July 1, 2021, well after this fee was imposed on Chaidez and after the parties had submitted their appellate briefs, Government Code section 6111 took effect. (Assem. Bill No. 1869 (2019–2020 Reg. Sess.) § 2, eff. Sept. 18, 2020, operative July 1, 2021; see *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 950–954 (*Lopez-Vinck*).) Government Code section 6111 provides, in relevant part, that "[o]n and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).)

Because this change in the law became effective after this appeal was fully briefed, we directed the parties to submit supplemental briefing on the effect of Government Code section 6111 on the disposition of the $154 criminal justice administration fee. In response, both sides agreed that the portion of this fee that remained unpaid as of July 1, 2021, must be vacated from the judgment. We agree and conclude the plain language of the newly-

---

consistent with one constitutional amendment does not necessarily serve to uphold it under another amendment that implicates a different right.

18

enacted statute mandates this result.  (*Lopez-Vinck*, *supra*, 68 Cal.App.5th at p. 953 [holding that "by its express terms, [Government Code] section 6111 envisions that the referenced costs are to be vacated, and it makes the vacatur mandatory through its use of the word 'shall' "].)  Accordingly, we will modify the judgment to vacate that portion of the criminal justice administration fee imposed under Government Code section 29550, et seq., that remained unpaid as of July 1, 2021.

DISPOSITION

The portion of the $154 criminal justice administration fee imposed under Government Code section 29550, et seq., that remained unpaid as of July 1, 2021, is vacated from the judgment.  As modified, the judgment is affirmed.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.