Filed 9/12/23  P. v. Velez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LUIS ANDRES VELEZ,<br><br>  Defendant and Appellant. | D081043<br><br>(Super. Ct. No. SCD291915)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on August 17, 2023, be modified as follows:

1.      On page 11 of the opinion, the second sentence of the last paragraph beginning with "Contrary to" is deleted and the following sentence is inserted in its place:

> In addition to Velez's proposed "but-for" standard (see *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 372), California courts have also applied the " 'substantial factor' " test in determining whether a victim's losses "result" from the defendant's conduct.

> Footnote 6 remains in place at the end of this sentence.

2.    On page 14 of the opinion, the first full paragraph starting with "Similarly here" is deleted and the following is inserted in its place:

Here, Velez fails to establish there is an absence of substantial evidence to support the trial court's implied finding that his criminal conduct was the cause of R.M.'s losses, including the missing contents of the stolen car.  Although he did not plead guilty to the unlawful taking of a vehicle or possession of a stolen vehicle, his *Harvey* waiver permitted the trial court to consider the entire factual background of the case and the dismissed charges when ordering restitution.  R.M. reported his vehicle was stolen between April 4 and April 5, 2021.  The *next day*, Velez was seen by two witnesses sitting *alone* in the driver seat of the stolen vehicle with shaved keys inside the ignition.  When one of the witnesses said he was going to call the police, Velez fled.  After retrieving the vehicle from the impound lot, R.M. discovered used clothing and empty drink containers inside, as though someone had been living in it.  The probation report indicates Velez had a history of homelessness.  The probation report also reflects that Velez has multiple prior convictions for violating Vehicle Code section 10851, an indication he has the knowledge and skill set required to break into vehicles.

While Velez claims the facts showed only that he was temporarily inside R.M's vehicle after it was previously stolen by others, he cites no record evidence supporting the conclusion someone else was the original thief.  In our view, when considered in the light most favorable to the judgment, the foregoing facts and the reasonable inferences flowing from them support the conclusion Velez was the proximate cause of the claimed loss under any standard.  They are supportive of the conclusion he was the original thief of the car and was therefore the but-for cause of R.M.'s loss of the laptop.  They also, as in *Holmberg*, support the conclusion Velez's concealing of the stolen car, and its contents, perpetuated the deprivation of property from R.M., such that Velez's conduct played more than a negligible or theoretical part in bringing about R.M.'s losses for the laptop computer and case.[8]  Our conclusion is further buttressed by Velez's concession that he is liable for other items missing from the stolen car, including ammunition, valuable documents, and gift cards despite claiming he was not the initial

2

thief.  We thus affirm the trial court's restitution order as a proper exercise of its discretion.

<u>The text of footnote 8 remains the same.</u>


There is no change in the judgment.

Appellant's petition for rehearing is denied.


O'ROURKE, Acting P. J.

Copies to:  All parties

Filed 8/17/23  P. v. Velez CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>LUIS ANDRES VELEZ,<br><br>      Defendant and Appellant. | D081043<br><br><br>(Super. Ct. No. SCD291915) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Nate Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

The People alleged Luis Andres Velez spray painted a store wall and stole a car. Velez pled guilty to vandalism (Pen. Code,[1] § 594, subds. (a), (b)(1)) for a stipulated three-year local prison commitment with execution of sentence suspended and a referral to Behavioral Health Court. As part of the plea and with Velez providing a *Harvey*[2] waiver, the People dismissed the remaining counts, including unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)), possession of a stolen vehicle (Pen. Code, § 496d), and unlawful possession of burglary tools (Pen. Code, § 466), as well as allegations he committed the charged offenses while out on bail (Pen. Code, § 12022.1, subd. (b)) and had suffered three prior felony vehicle theft convictions (Pen. Code, § 666.5, subd. (a)).

As a condition of probation, Velez was ordered to pay $6,817 in restitution to the victim whose car was stolen. The order included $1,072 for a laptop computer and case missing from the car trunk. Velez contends these items were erroneously included in the restitution order because they were not within the scope of his *Harvey* waiver and he did not cause their loss. Velez further contends he was erroneously precluded from impeaching the victim at the restitution hearing with evidence of the victim's misdemeanor convictions and thus the trial court abused its discretion in finding the victim a credible witness. We find no abuse of discretion by the trial court and affirm the judgment.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

FACTUAL AND PROCEDURAL BACKGROUND

Velez entered his guilty plea on February 17, 2022. In his written plea form, he acknowledged he "must pay full restitution to all victims" and agreed, as stated in his *Harvey* waiver, that the sentencing judge may consider his "prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence."

The probation department's sentencing report was filed with the court on March 14, 2022. The report contained the following facts underlying the dismissed counts:[3] R.M. reported his 2000 Honda Accord was stolen between April 4 and April 5, 2021. On April 6, police officers responded to "a call of an occupied stolen vehicle" on a public street. The officers found R.M.'s car with " 'shaved keys' " inside the ignition and Velez at a nearby location. Two witnesses positively identified Velez as the man they had seen in the driver seat of the stolen car. Velez denied stealing the car. He said he was homeless and had fallen asleep next to the car. The probation report also contained a statement by R.M. that he was requesting $8,153 in restitution for losses he incurred as a result of the theft. The amount requested included $950 for a 17-inch Dell laptop computer and $122 for a computer case that were both missing from the trunk of his car.

The sentencing hearing was held on May 17, 2022. After implementing the stipulated terms of the plea agreement, the trial court stated: "We have restitution the court can't waive. There's [R.M.], who is seeking $8,153 regarding damage to his car. I'm ordering restitution in the

---

[3] The summary was based on the police reports and preliminary hearing transcript.

3

amount to be determined." Counsel for Velez did not raise any issues regarding R.M.'s claim for restitution, including that he was missing the laptop computer and case.

R.M. testified at the restitution hearing held on August 12, 2022. When he picked up his stolen car from the tow yard, he found the "trunk had been gone through" and his laptop computer and case were gone. He bought a comparable replacement for the laptop computer for $931.63, a new computer bag and mouse for $218.77, and incurred other miscellaneous expenses to replace the computer. His car was also "declared totaled" as a result of the damages and he bought a replacement car for $2,500. Additionally, he incurred expenses for ride shares, rental cars, towing, gas, roadside assistance, car parts and repairs, and losses for a pair of gloves and gift cards he had in the glove compartment. He presented receipts and invoices to support each of his claims.

The defense presented hearsay evidence, over the prosecutor's objection, that R.M. failed to mention the missing laptop computer or case when he previously spoke to a police officer and detective. R.M., however, testified he believed he had told the officer and detective about the laptop computer and case. Defense counsel attempted to question R.M. on whether he had suffered misdemeanor convictions in 2004 for forgery (Pen. Code, § 475, subd. (a)) and receipt of stolen property (Pen. Code, § 496, subd. (a)); in 2006 for petty theft (Pen. Code, § 484); and in 2007 or 2008 for "possession of child pornography." The trial court sustained the prosecutor's objections to the use of the misdemeanor convictions under Evidence Code section 352.

At the end of the hearing, the trial court found R.M. credible and ordered Velez to pay him a total of $6,817 in restitution,[4] which included the replacement values for the laptop computer of $950 and for the computer case of $122.

## DISCUSSION

## I.

### *Restitution Order*

Velez asserts the trial court abused its discretion by ordering him to pay restitution for the laptop computer and case, for two reasons:  First, he contends the loss was not within the scope of his *Harvey* waiver because "[a]t the time of the deal, . . . no party was aware of a missing laptop[, n]o laptop theft charge was filed or dismissed and no facts of a laptop were 'readily apparent.' "  Second, Velez contends he was not the "but-for" cause of the laptop loss because the People's evidence that he stole the car was " 'very weak' " and showed only that he "was near or in the car one night."  We conclude these contentions are not meritorious.

Article I, section 28, subdivision (b), of the California Constitution sets forth a broad constitutional mandate that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer" and "[r]estitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss."  (Cal. Const. art. I, § 28, subd. (b)(13)(A) and (B); see *People v.*

---

[4]    This amount differed from the $8,153 stated in the probation report because R.M. included both the replacement values and replacement costs of the laptop computer and bag.  As the parties agreed, the court allowed only the replacement values in the final amount ordered.

5

*Kelly* (2020) 59 Cal.App.5th 1172, 1178.) Statutory provisions implementing the victim's right to restitution are " 'broadly and liberally construed.' " (*People v. Stanley* (2012) 54 Cal.4th 734, 737 (*Stanley*).)

Section 1202.4 provides: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) Section 1203.1 applies to cases, such as this, in which the court suspends imposition or execution of sentence and grants probation. (§ 1203.1, subds. (a)(3), (b).) It confers a trial court with even broader discretion to order victim restitution in probation cases than in non-probation cases. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*); accord *People v. Anderson* (2010) 50 Cal.4th 19, 25–29 (*Anderson*); *Anderson*, at p. 29 [trial courts have authority under § 1203.1 "to impose restitution as a condition of probation in circumstances not otherwise dictated by [§] 1202.4"].) Under section 1203.1, the restitution condition need only be "reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*Carbajal*, at p. 1123.)

"The standard of proof at a restitution hearing is preponderance of the evidence. [Citation.] A victim's statement of economic loss is prima facie evidence of loss." (*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 (*Grandpierre*).) " ' " '[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider' " ' in determining victim restitution." (*People v. Phu* (2009) 179 Cal.App.4th 280, 283.) The loss may be based on the victim's estimate. (*People v. Goulart* (1990) 224 Cal.App.3d 71, 82–83 (*Goulart*).) It may also be based on "[d]ocumentary

6

evidence, such as bills, receipts, . . . business records, and similar documents relevant to . . . wages and profits lost[.]" (§ 1203.1d, subd. (d).) The court is also entitled to consider the probation report. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320 (*Holmberg*).) Once a prima facie case of economic loss has been made, "the defendant has the burden to disprove the amount of losses the victim claimed." (*Grandpierre*, at p. 115.)

We review a victim restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 656.) "We determine whether the restitution order, as a condition of probation, is arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances. [Citations.] 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]" ' " (*Anderson*, *supra*, 50 Cal.4th at p. 32, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499.)

A.    Harvey *Waiver*

Velez argues restitution for the missing laptop computer and case are outside the scope of his *Harvey* waiver because he was never charged with stealing them, or made aware of their existence when he pled guilty to a "wholly unrelated vandalism charge." He contends he knew only that "a 20[-]year[-]old car" was stolen, "along with ammunition, valuable documents, medical records, and gift cards from inside of the car" and thus he intended only to permit the sentencing court to consider those facts in assessing restitution.

We disagree the effect of Velez's *Harvey* waiver is so narrow. To the contrary, a *Harvey* waiver expands the scope of what the sentencing court may consider when ordering victim restitution. The court is not limited to imposing restitution for losses resulting from crimes of which the defendant was convicted. (*Carbajal, supra*, 10 Cal.4th at p. 1121; *Goulart, supra*, 224 Cal.App.3d at p. 79.) It "may also consider crimes which were charged but dismissed [citation]; uncharged crimes, the existence of which is readily apparent from the facts elicited at trial [citation]; or even charges of which the defendant was acquitted, if justice requires they be considered." (*Goulart*, at p. 79*; accord *Carbajal* at p. 1121.)

Velez agreed to a standard *Harvey* waiver with broad terms allowing the sentencing court to consider his "prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." Thus, the court had discretion to consider all the facts surrounding Velez's arrest; the dismissed vehicle theft charges; the dismissed allegations he has previously been convicted of vehicle theft charges within the meaning of the sentencing enhancement under section 666.5, subdivision (a)[5]; and any unfiled charges underlying the case. (See *Goulart*, 224

---

[5] "Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code, or felony grand theft involving an automobile in violation of subdivision (d) of Section 487 or former subdivision (3) of Section 487, . . . or felony grand theft involving a motor vehicle, as defined in Section 415 of the Vehicle Code, any trailer, . . . or a felony violation of Section 496d regardless of whether or not the person actually served a prior prison term for those offenses, is subsequently convicted of any of these offenses shall be punished by imprisonment . . . for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment." (Pen. Code, § 666.5, subd. (a).) Here, Velez

Cal.App.3d at p. 79.) The scope of Velez's waiver, along with the broad and liberal interpretation of California's restitution statutes (*Stanley*, *supra*, 54 Cal.4th at p. 737), conferred the trial court with discretion to consider more than the facts underlying the vandalism charge to which he pled guilty and more than just direct evidence that he was in possession of the victim's stolen vehicle.

Velez relies on *People v. Myers* (1984) 157 Cal.App.3d 1162 and argues his *Harvey* waiver permitted the trial court to consider only those " 'readily apparent facts' " of the vehicle theft charges in setting restitution—in other words, only the items known to the parties to be missing or lost at the time of his plea. *Myers* is inapposite. It did not involve restitution. There, the defendant pled guilty to forgery with an understanding another charge and three prior felony convictions would not be filed against him. His plea agreement contained a *Harvey* waiver as to the unfiled priors and the dismissed count. The trial court then imposed a prison sentence, after finding the defendant statutorily ineligible for probation because of the unfiled prior felony convictions. (*Id.* at p. 1166.) The People asserted they were not required to plead and prove the defendant's prior felony convictions beyond a reasonable doubt when establishing probation ineligibility pursuant to section 1203, subdivision (e)(4), because his *Harvey* waiver expressly allowed the court to consider the unfiled prior convictions. (*Myers,* at pp. 1167–1168.)

---

was twice convicted of felony vehicle theft under Vehicle Code section 10851, in 2015 and 2018, and of felony receipt of a stolen vehicle under Penal Code section 496d. According to the probation report, Velez was found sitting inside a stolen vehicle in 2015. In 2018, Velez stole a car, which the victim was able to track with the cellphone he left inside the car, and Velez was determined to have broken into another car to steal the day before.

The Court of Appeal disagreed, and held "a *Harvey* waiver was ineffective to eliminate the 'pleading and proving requirements necessary to make a defendant statutorily ineligible to receive probation or to impose an enhancement term.'" (*People v. Baumann* (1985) 176 Cal.App.3d 67, 75–76 [discussing *Myers*].) The circumstances of *Myers* are not present here. We are not aware of any authority, and Velez has not directed us to any, that would require a *Harvey* waiver as to restitution to specify every item of loss that would be claimed by a victim at a subsequent restitution hearing. As the *Baumann* court noted: "In contrast to *Myers*, the prosecution was not required to plead and prove *the amount of restitution* that might be ordered in the event the court, in the exercise of its discretion, granted probation." (*Baumann*, at p. 76, italics added.)

We also reject Velez's claim that his due process rights were violated by the prosecution's "late added requests for unexpected losses." "The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing." '" (*People v. Cain* (2000) 82 Cal.App.4th 81, 86; accord *People v. Prosser* (2007) 157 Cal.App.4th 682, 692.)

Here, the probation report was filed on March 14, 2022, more than two months before the sentencing hearing and five months before the restitution hearing. The report informed Velez that R.M. was requesting restitution for the missing laptop computer and case. And at the sentencing hearing on May 17, the trial court highlighted the probation report to inform Velez, "[t]here's [R.M.], who is seeking $8,153 regarding damage to his car," before ordering him to pay restitution in the amount to be determined. Yet Velez

10

did not raise any issues regarding R.M.'s claim for restitution, including that he was missing the laptop computer and case. Like the defendant in *People v. Weatherton* (2015) 238 Cal.App.4th 676, 686, "[Velez] never asked to have his guilty plea[ ] withdrawn because of a misapprehension on this point." Velez had ample notice and opportunity to respond to matters in the probation report regarding restitution. We thus conclude Velez's due process right to a fair restitution hearing was satisfied.

In sum, we conclude restitution for the contents of the stolen vehicle, including the laptop computer and case, fell within the scope of the *Harvey* waiver and the trial court had discretion to properly consider those items in determining restitution.

B.    *Causation*

Velez next asserts—without any record citation—that "substantial evidence suggests someone else stole the car," and only days later was he "in or near the car." So, because he was not the car's "initial thief," Velez contends "but-for" his possession of the stolen car days later, R.M.'s loss of the laptop computer and case "would be the same as without . . . Velez's being with the car." We are not persuaded.

Section 1202.4, subdivision (f)(3), provides: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of the defendant's criminal conduct*[.]" (Italics added.) Contrary to Velez's proposed "but-for" standard, California courts have adopted the " 'substantial factor' " test in determining whether a victim's losses "result"

11

from the defendant's conduct.[6] (*Foalima, supra,* 239 Cal.App.4th at p. 1396; *Holmberg, supra,* 195 Cal.App.4th at p. 1321.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*Holmberg,* at pp. 1321–1322.)

Velez's argument regarding causation is similar to the one raised, and rejected, in *Holmberg,* a case he relies on.[7] In *Holmberg,* three businesses

---

[6] But as the court in *Foalima* noted, "[t]he substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct. [Citations.] The substantial factor standard, however, has been embraced as a clearer rule of causation— one which subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact." (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396–1397 (*Foalima*).)

[7] Velez also cites to *People v. Scroggins* (1987) 191 Cal.App.3d 502 in support of his argument he was not the but-for cause of the missing laptop. *Scroggins* is unhelpful for two reasons. First, Scroggins did not present an appeal of a victim restitution order following a defendant's plea with a *Harvey* waiver. Second, Scroggins relied on the holding of *People v. Richards* (1976) 17 Cal.3d 614 "that to be valid a restitution order that exceeds the loss caused by defendant's offense must serve a rehabilitative purpose and such purpose cannot be served 'unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted[.]' " *(Scroggins,* at pp. 505–506, quoting *Richards,* at p. 622.) The California Supreme Court disapproved of the *Richards* holding in *Carbajal, supra,* 10 Cal.4th at page 1126 ("[I]nsofar as *Richards* may be read to require that trial courts refrain from conditioning probation on

12

were burglarized. One in particular, Stonecrest Financial, had its computers, monitors, USB backup drives, and credit cards stolen. Several computers were also damaged during the burglary. Later the same day and the next day, the defendant used the stolen credit cards at several stores. During a warrant search of the defendant's home two months later, multiple hard drives and other equipment stolen from Stonecrest Financial and property stolen from the other two businesses were recovered. (*Holmberg*, *supra*, 195 Cal.App.4th at pp. 1313–1315.) After the defendant pled no contest to concealing stolen property (§ 496, subd. (a)) and using a stolen credit card (§§ 484g, subd. (a), 487), the defendant was ordered to pay restitution to the victims, including $10,000 to Stonecrest Financial for loss of business income during the time it was without its computers. (*Id.* at pp. 1316, 1318.)

On appeal, the defendant in *Holmberg* argued the restitution order was improper because it was not causally related to his crime of possessing stolen property. Like Velez, he argued "the victims' losses would have occurred even without his act and that the damages were due to the burglaries rather than his concealing the property." (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1322.) The Court of Appeal rejected the argument, finding that it "ignores the fact that there can be more than one cause of injury and that multiple causes can combine to cause harm." (*Ibid.*) The court then concluded the defendant's "concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property." (*Ibid.*) It noted that had the defendant contacted law enforcement about the stolen items when he received them, Stonecrest Financial would not have had to replace them or

restitution 'unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted . . .' [citation], we disapprove it.").

incur a one week loss of business and productivity. Thus, his conduct played more than a negligible or theoretical part in bringing about the victims' losses. (*Ibid*.)

Similarly here, even assuming Velez could prove he was not the car's "initial thief," his possession of the stolen vehicle was a "substantial factor" in bringing about R.M.'s losses, including the missing contents of the stolen car. Although he did not plead guilty to the unlawful taking of a vehicle or possession of a stolen vehicle, his *Harvey* waiver permitted the trial court to consider the entire factual background of the case and the dismissed charges when ordering restitution. And there was substantial evidence to support the trial court's finding that Velez was, at minimum, in knowing possession of the stolen car. R.M. reported his vehicle was stolen between April 4 and April 5, 2021. The *next day*, Velez was seen by two witnesses sitting alone in the driver seat of the stolen vehicle with shaved keys. As in *Holmberg*, Velez's concealing of the stolen car, and its contents, perpetuated the deprivation of property from R.M. Thus Velez's conduct played more than a negligible or theoretical part in bringing about R.M.'s losses for the laptop computer and case.[8] Our conclusion is further buttressed by Velez's concession that he is liable for other items missing from the stolen car, including ammunition, valuable documents, and gift cards despite claiming he was not the initial thief. We thus affirm the trial court's restitution order as a proper exercise of its discretion.

---

[8]    For the same reasons, we reject Velez's argument that the trial court's "calculation" of restitution for the missing laptop computer lacked a rational basis because it could not be based on the court's finding that he was in the stolen car. The calculation of restitution may be based simply on a victim's statement or estimate of his economic loss. (*Grandpierre, supra*, 66 Cal.App.5th at p. 115; *Goulart, supra*, 224 Cal.App.3d at pp. 82–83.)

II.

*Evidence of the Victim's Misdemeanor Convictions*

During cross examination of R.M., counsel for Velez attempted to impeach R.M. with the fact he had suffered three prior misdemeanor convictions. The trial court sustained the prosecutor's objections and precluded the defense's line of questioning under Evidence Code section 352, finding the convictions remote and not relevant to the restitution hearing. Velez contends this was error and as a consequence, the court abused its discretion in finding R.M. credible without evidence of his prior misdemeanor convictions. We are not persuaded.

A witness "may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) This rule reflects the belief that "[m]isconduct involving moral turpitude may suggest a willingness to lie[.]" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295–296 (*Wheeler*).) "In general, [however], a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony." (*Id.* at p. 296.) For that reason, trial courts "may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Id.* at pp. 296–297.)

We review a trial court's ruling to admit or exclude impeachment evidence for abuse of discretion and will not disturb the ruling "unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.) "[A] trial court does not abuse its

15

discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark*, *supra*, 52 Cal.4th at p. 932.)

We note that defense counsel attempted only to impeach R.M. with *the fact of his convictions*, and not the underlying criminal conduct, by asking R.M. if he had suffered the convictions. Our high court held in *Wheeler* that even if the victim's testimony was competent to establish the fact of conviction, "evidence of a misdemeanor conviction, *whether documentary or testimonial* is inadmissible hearsay when offered to impeach a witness's credibility." (*Wheeler*, *supra*, 4 Cal.4th at p. 300, some italics added; accord *People v. Chatman* (2006) 38 Cal.4th 344, 373 (*Chatman*).) However, the Court in *Wheeler* made clear its holding was premised on "current law" and noted the Legislature was not precluded from creating a hearsay exception that would allow use of a misdemeanor conviction for impeachment in criminal cases. (*Wheeler*, at p. 300, fn. 14.) In 1996, the Legislature enacted Evidence Code section 452.5 which provides: "An official record of conviction certified . . . is admissible . . . to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record." (Evid. Code, § 452.5 subd. (b)(1); see *People v. Duran* (2002) 97 Cal.App.4th 1448, 1461, review denied July 24, 2002.) The court in *Duran* found Evidence Code section 452.5, subdivision (b)(1), was "the type of hearsay exception contemplated in *Wheeler*" and held it unambiguously permitted the use of certified official records of conviction to prove not only the fact of a conviction,

16

but also the commission of the underlying offense. (*Duran*, at pp. 1460–1461.)

It is unclear whether Evidence Code section 452.5, as interpreted by *Duran*, abrogates *Wheeler* on this point since the California Supreme Court later reaffirmed that "[m]isdemeanor convictions themselves are not admissible for impeachment, although evidence of the underlying prior *conduct* may be admissible subject to the court's exercise of discretion."[9] (*Chatman, supra,* 38 Cal.4th at p. 373, citing *Wheeler, supra,* 4 Cal.4th at pp. 297–300.) We do not need to reach this question, however, because the parties do not address it and have instead assumed the court's ruling was to exclude evidence of R.M.'s "prior misdemeanor conduct." We will assume the same for purposes of our analysis and conclude the trial court properly exercised its discretion under Evidence Code section 352.

Here, the trial court excluded evidence of R.M.'s prior conduct underlying misdemeanor convictions in 2004 for forgery and receipt of stolen property, in 2006 for petty theft, and in 2007 or 2008 for "possession of child pornography." The misdemeanor convictions at issue were 14, 16, and 18 years old. There was no evidence or suggestion that R.M. had failed to lead

---

9     At the restitution hearing, the trial court asked defense counsel, "How do you impeach with a misdemeanor?" Velez argues in his opening brief on appeal that the court's question demonstrated it did not understand its discretion to admit evidence of "impeachment for misdemeanor moral turpitude" under *Wheeler*. We disagree. In response to the court's question, defense counsel stated: "The same way you impeach with a felony. . . . It used to be that you had to like call the police officer or have somebody admitted. But you can actually . . . more recent authority is *you can actually offer the conviction itself*." (Italics added.) Defense counsel's answer provides context and suggests the court's question is better understood as pertaining to whether the defense could impeach with the fact of conviction.

"a legally blameless life" in the 14 years since his last misdemeanor conviction. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925–926.) Thus it was reasonable for the court to conclude the victim's convictions were too remote to be relevant to its determination of the proper restitution amount. "When the witness subject to impeachment is *not* the defendant, [the relevant] factors prominently include whether the conviction (1) reflects on honesty and (2) *is near in time*." (*People v. Clair* (1992) 2 Cal.4th 629, 654–655 (*Clair*), italics added.)

As the California Supreme Court has repeatedly noted, " '[t]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude" but "[b]eyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' " (*Clark, supra*, 52 Cal.4th at p. 931, quoting *Wheeler, supra*, 4 Cal.4th at p. 296.) Although another court might have reached a different conclusion, that fact "reveals nothing more than that a reasonable difference of opinion was possible," not that the court in this case exceeded the bounds of reason. (*Clair, supra*, 2 Cal.4th at p. 655.) We find no abuse of discretion here. Consequently, we reject Velez's argument that the court also abused its discretion in ultimately finding R.M. to be a credible witness in determining the proper amount of restitution. (See, e.g., *People v. De Paula* (1954) 43 Cal.2d 643, 649 ["A reviewing court may not reappraise the credibility of witnesses and reweigh the evidence."].)

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.